# CASES

## ARGUED AND DETERMINED

### IN THE

# SUPREME COURT OF ILLINOIS.

JOHN A. COOKE, Plaintiff in Error, *vs.* THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error.

*Opinion filed October 23, 1907—Rehearing denied Dec. 11, 1907.*

1. CRIMINAL LAW—*object of bill of particulars in a conspiracy case.* The object of a bill of particulars, under a general conspiracy indictment, is to give the accused notice of the specific charges he is required to meet on the trial.

2. SAME—*when additional bill of particulars may be filed.* Under a general conspiracy indictment, where the original bill of particulars specifies charges of padding pay-rolls by the use of fictitious names, an additional bill of particulars specifying fictitious names not mentioned in the original bill may properly be filed.

3. SAME—*State's attorney may read bill of particulars in opening statement.* Upon a trial for conspiracy under a general conspiracy indictment, the bill of particulars specifying the charges the accused is required to meet, which was filed by order of the court at the request of the accused, may be read to the jury by the State's attorney in his opening statement.

4. SAME—*it is not reversible error to allow jury to take bill of particulars to jury room.* It is not reversible error to permit the jury, upon a trial under a general conspiracy indictment, to take the bill of particulars to the jury room upon their retirement to consider their verdict.

5. SAME—*when books of bank are admissible on trial for conspiracy.* Upon a trial for conspiracy to defraud the county of

money by means of padded pay-rolls, books of a bank are admissible to show that the proceeds of warrants issued to fictitious persons reached the private account of the accused, where the deposit slips and books are identified by the cashier of the bank, who testifies that the entries were made in the usual course of business, although they were not made by him personally but by other clerks, who, since the bank ceased to exist, had moved to different places, some of them to other States.

6. SAME—*what is not a variance.* The fact that an indictment charges that the accused conspired with a certain named person and divers other persons whose names "are unknown" to the grand jurors, whereas the proof shows that one of the co-conspirators who was not named in the indictment was a witness before the grand jury, does not constitute a variance, where there is no evidence that the grand jury knew he was a co-conspirator although they were informed as to his name, the inference in such case being that if they had known he was a co-conspirator he would have been named in the indictment.

7. CONSPIRACY—*Statute of Limitations begins to run from last overt act.* In Illinois, in prosecutions for conspiracy, the Statute of Limitations does not begin to run from the time the conspiracy was entered into, but from the commission of the last overt act in furtherance of such conspiracy.

8. SAME—*fact that new person enters conspiracy does not make a new conspiracy.* Every person who enters a conspiracy already formed is deemed, in law, a party to all acts done by any of the other parties, before or afterwards, in furtherance of the common design; and the entry of such persons into a conspiracy already formed does not make a new and distinct conspiracy.

9. SAME—*when party is guilty of conspiracy to defraud county.* A clerk of the circuit court who arranges with his chief clerk to have the pay-rolls of the office padded, in order to obtain for his own use, through warrants upon the county treasurer in the names of fictitious persons, fees of the office which have been paid into the county treasury, is guilty of conspiracy to defraud the county of money.

10. JURORS—*what is not a cause for challenge.* Statements by jurors upon their *voir dire* that they knew nothing of the cause except what they had read in the newspapers with reference thereto, from which they had formed opinions which they had not expressed, but that, regardless of what they had read, they were of the opinion they could give the accused a fair and impartial trial upon the law and the evidence, are not cause for challenge.

WRIT OF ERROR to the Branch Appellate Court for the First District;—heard in that court on writ of error to the Criminal Court of Cook county; the Hon. BEN M. SMITH, Judge, presiding.

DANIEL DONAHOE, and JAMES HARTNETT, for plaintiff in error.

W. H. STEAD, Attorney General, and JOHN J. HEALY, State's Attorney, (HOBART P. YOUNG, of counsel,) for the People.

Mr. CHIEF JUSTICE HAND delivered the opinion of the court:

The grand jury of Cook county, at the April term, 1906, returned into the criminal court of said county an indictment charging the plaintiff in error with having formed a conspiracy with Charles H. Bradley, and with divers other persons whose names were to the grand jurors unknown, to cheat and defraud Cook county, and to obtain, by means of false pretenses, from said county a large sum of money. A motion to quash the indictment was overruled, whereupon a bill of particulars was filed by the State's attorney upon the motion of the plaintiff in error, and a plea of not guilty was entered, and a trial was had before the court and a jury, which resulted in the conviction of the plaintiff in error and a judgment sentencing him to pay a fine of $2000 and to be imprisoned in the penitentiary for an indeterminate period, which judgment was affirmed by the Branch Appellate Court for the First District, and a writ of error has been sued out from this court to review the record made in said cause.

It appears from the undisputed evidence that the plaintiff in error was elected clerk of the circuit court of Cook county, Illinois, on November 3, 1896, and on December 7 of that year he duly qualified as such clerk and entered upon

the discharge of the duties of said office, and continued to act as clerk of said court until December 5, 1904,—a period of eight years, he having been re-elected in the year 1900; that Charles H. Bradley, who was named as a co-conspirator in the indictment, was appointed chief clerk of the circuit court of Cook county in the year 1884 by the then clerk of said court, and continued to act as chief clerk of said court up to the year 1896; that the plaintiff in error, upon his election to said office, appointed said Charles H. Bradley his chief clerk, which position Charles H. Bradley continued to hold until June 30, 1904, when he was succeeded as chief clerk of the circuit court by John E. Seinwerth, which position Seinwerth continued to occupy until the expiration of the term of office of the plaintiff in error as circuit clerk of said county; that the salary fixed by law for the circuit clerk of Cook county during the eight years that plaintiff in error held said position was the sum of $5000 per annum; that shortly after plaintiff in error was elected circuit clerk he stated to Charles H. Bradley the office ought to pay him, as he was informed, from $10,000 to $15,000 per annum; that in 1897 plaintiff in error and Charles H. Bradley, and so long as Bradley remained chief clerk, and afterwards Seinwerth while he acted as chief clerk, systematically padded the pay-rolls in the circuit clerk's office in said county from month to month, by placing on said pay-rolls the names of real or fictitious persons who were not employed in the circuit clerk's office of Cook county, and by means of such padded pay-rolls, during the eight years the plaintiff in error was circuit clerk of Cook county, he fraudulently obtained from the county treasury of said county the sum of $22,590.51; that the plaintiff in error and Bradley or Seinwerth would select from the city directory, or otherwise, a list of names, which, when the monthly pay-roll of the circuit clerk's office was made up, would be placed thereon; that the pay-roll of said office, with said fictitious names thereon, would then be filed in the comp-

troller's office of the county of Cook by Bradley or Sein-werth; that warrants would be issued to each individual whose name appeared upon the pay-roll. Each employee in the office of the circuit clerk would receive, personally, his warrant from the comptroller, which, upon its being properly endorsed by him and presented, would be paid to him by the county treasurer. The warrants which were issued in the names of the fictitious persons would be received by and receipted for by Bradley or Seinwerth. The payees' names would thereupon be endorsed upon said warrants by either Bradley or Seinwerth, and the warrants would be presented to the county treasurer and payment received thereon. When the money was collected upon said warrants it would be turned over by Bradley or Seinwerth to the plaintiff in error, or at his direction be deposited to his individual account in the Chicago National Bank of Chicago. In one instance the original warrants issued to fourteen fictitious persons, for sums aggregating $1440, were received and receipted for by Bradley and the payee's name endorsed thereon by him, and the warrants, thus endorsed, deposited by him to the credit of the private account of the plaintiff in error in said Chicago National Bank, and said warrants were collected by said bank of the county treasurer of Cook county and plaintiff in error received credit for said amount in his private account in said bank. In another instance a slip with ten fictitious names written thereon in the plaintiff in error's handwriting was introduced in evidence. These names went onto the monthly pay-roll of the circuit clerk's office. Warrants were issued on such pay-rolls by the comptroller in the names of said fictitious persons, and said warrants were receipted for by Bradley and the payees' names endorsed thereon by him, and the amount thereof was collected by him from the county treasurer of Cook county and deposited by him to the credit of the private account of the plaintiff in error in said Chicago National Bank. In many other instances the

deposit slips filed by Bradley with the Chicago National Bank at the time he made deposits to the credit of the private account of the plaintiff in error in said bank showed that the plaintiff in error received credit in his private account in said bank for the precise amount received by Bradley upon warrants issued to fictitious persons named on the pay-roll of the circuit clerk's office. After the cash received from the county treasurer was turned over by Bradley to the plaintiff in error, and after he had counted it, he would frequently add to it or retain a portion thereof, and then give the amount thus made up or thus remaining, with his private bank book, to Bradley, with directions to Bradley to deposit the amount thus paid to him to the private account of the plaintiff in error.

Numerous assignments of error,—forty-two in number,—have been made upon this record, and numerous propositions have been elaborately discussed in the briefs filed by counsel for plaintiff in error in support of said assignments of error. The contentions thus made will be taken up in this opinion in their order and considered.

It is first contended that the court erred (1) in declining to quash certain paragraphs of the original bill of particulars; (2) in permitting the State's attorney to file an additional bill of particulars; (3) in permitting the State's attorney to read the original bill of particulars and additional bill of particulars in his opening statement to the jury; and (4) in permitting the original bill of particulars and additional bill of particulars to be in the possession of the jury while they were considering their verdict.

The indictment contained two counts. The first was based upon the statute and the second upon the common law, and each charged, in general terms, a conspiracy to cheat and defraud the county of Cook and to obtain its money by false pretenses. No specific overt acts were charged, and the original bill of particulars filed by the State's attorney upon the order of the court, at the request of the plaintiff in

error, was a specification of the specific charges upon which the People would rely to sustain a conviction.

In *McDonald* v. *People,* 126 Ill. 150, it was pointed out that the office of a bill of particulars is to give the accused, under a general conspiracy indictment like this, notice of the specific charge or charges he is required to meet on the trial, so that he might be prepared to make his defense. The original bill of particulars filed in this case pointed out to the defendant the specific charges which the People would seek to support by proof to show the guilt of the plaintiff in error upon the trial of said indictment, and the additional bill of particulars filed by the State's attorney by leave of court was only a further specification of the names of fictitious persons not stated in the original bill of particulars, which the People would seek to show the plaintiff in error and his co-conspirators had used as a means whereby to obtain the funds of Cook county. We think the original bill of particulars and the additional bill of particulars were in proper form, and that the court did not err in refusing to quash the original bill of particulars or any part thereof, or in permitting the additional bill of particulars to be filed.

We also think that the State's attorney had the same right to read, in his opening statement, said bills of particulars to the jury that he had to read to them the indictment or to state to them the specific overt acts of the plaintiff in error and his co-conspirators which the People would rely upon to sustain a conviction, and that the court did not err in permitting the State's attorney to incorporate the substance of said bills of particulars in his opening statement by reading the same to the jury; also that the court did not commit reversible error in allowing the jury to have with them said bills of particulars in the jury room.

In *Dunn* v. *People,* 172 Ill. 582, it was held that whether a writing should be delivered to the jury upon their retirement to consider their verdict rested largely in the sound discretion and judgment of the trial court, and that this

court would not reverse a trial court for permitting the jury
to take with them to the jury room a written instrument
which was properly before them, unless it clearly appeared
that the action of the trial court was prejudicial to the ac-
cused and ought not to have been pursued.

It is next contended that the trial court erred in admit-
ting in evidence the books of account of the Chicago Na-
tional Bank, showing that the funds deposited by Charles H.
Bradley and John E. Seinwerth in said bank to the private
account of the plaintiff in error had passed to the private
account of the plaintiff in error upon the books of the said
bank. It appeared from the testimony of Bradley, at the
time he made said deposits he presented to the officer of the
bank receiving such deposits, deposit slips showing that the
funds then delivered to the bank by him were placed in
said bank to be credited to the private account of the plain-
tiff in error. These deposit slips were produced by the
cashier of said bank and fully identified and received in evi-
dence. The cashier then produced numerous books of the
bank and traced the entries of said deposits upon the sev-
eral books thus produced until such deposits were credited
to the individual account of the plaintiff in error in the
books of said bank. He testified that the books produced
by him were books kept by said bank and that the entries
thereon were made in the usual and due course of business
in said bank. He stated, however, that while said books
were under his control and general supervision, as cashier
of the bank, the entries made therein were not made by him
personally, but were made by different clerks and book-
keepers in the employ of the bank; that the bank had
ceased doing active business, and that said clerks and book-
keepers were not, at the time of the trial, in the employ of
the bank but were living in different places, many of them
being in foreign States. We think the books of the bank,
when taken in connection with the deposit slips and the tes-
timony of Bradley and the cashier, were admissible in evi-

dence, as against the plaintiff in error,· for the purpose of showing that the money deposited by Bradley and Seinwerth in said bank was credited to the individual account of the plaintiff in error. *Chisholm* v. *Beaman Machine Co.* 160 Ill. 101; *Continental Nat. Bank* v. *First Nat. Bank,* 108 Tenn. 374; *Nelson* v. *Bank,* 69 Fed. Rep. 805.

It is further contended that there is a fatal variance between the averments of the indictment and the proofs offered in support thereof. The indictment averred that the plaintiff in error conspired "with one Charles H. Bradley and with divers ·other persons whose names" were to the grand jury unknown. It was shown upon the trial that John E. Seinwerth, who was chief clerk from July 1, 1904, to the end of plaintiff in error's term as circuit clerk of Cook county, was a co-conspirator of the plaintiff in error; that John E. Seinwerth appeared before the grand jury that found the indictment against plaintiff in error, as a witness, and informed the grand jury that his name was John E. Seinwerth. The evidence of Seinwerth before the grand jury, other than that he informed the grand jury his name was John E. Seinwerth, does not appear in this record. It is said, however, the inference to be drawn from the language of the indictment is, that the grand jury learned, during its investigation, who the plaintiff in error's co-conspirators were but did not learn their names, and as John E. Seinwerth was a co-conspirator the grand jury· must have known that fact, and when they averred in the indictment returned against plaintiff in error that they did not know his name they made a mistake of fact, and as they knew he was a co-conspirator of the plaintiff in error and knew his name when they framed the indictment, there is a variance between the indictment and the proof and that the conviction cannot be sustained. We do not agree with this reasoning. There is no evidence in this record tending to show that the grand jury knew John E. Seinwerth was a co-conspirator of the plaintiff in error, and when they say

in the indictment that the plaintiff in error conspired with Charles H. Bradley, "and with divers other persons whose names" were to the grand jurors unknown, we think the inference clearly is that they did not know that John E. Seinwerth was a co-conspirator of plaintiff in error, or, as they knew his name, they would have charged him in the indictment by naming him as a co-conspirator of plaintiff in error. In other words, had the grand jury been informed of the fact that John E. Seinwerth was a co-conspirator and also of his name, they would have charged him in the indictment, by name, as a co-conspirator with the plaintiff in error, but as they failed to charge him as a co-conspirator, by name, in the indictment, the inference is they did not know he was a co-conspirator with plaintiff in error at the time they framed the indictment. We think, therefore, it cannot be said upon this record that the grand jury knew John E. Seinwerth was a co-conspirator of the plaintiff in error at the time they found the indictment against plaintiff in error upon which he was placed upon trial. We therefore are of the opinion there was no variance between the indictment and the proofs.

It is next urged that the offense, at the time the indictment was found, was barred by the Statute of Limitations. The indictment was returned on April 28, 1906, and as the period of limitation is eighteen months, it was necessary to show that the conspiracy existed after October 28, 1904. The evidence shows that the pay-roll for October, 1904, which was dated October 31, 1904, and the pay-roll for November, 1904, which was dated November 29, 1904, of the circuit clerk's office of Cook county, contained fictitious names upon which warrants issued by the comptroller of Cook county, which were received by Bradley and Seinwerth and collected of the county treasurer of Cook county by them and deposited in the Chicago National Bank to the credit of the plaintiff in error's private account. In this State, regardless of what the rule may be in other States,

in prosecutions for conspiracy the Statute of Limitations does not begin to run from the time the conspiracy was entered into, but it commences to run from the commission of the last overt act in furtherance of the object of the conspiracy. (*Ochs* v. *People,* 124 Ill. 399.) Here the last overt act in furtherance of the conspiracy was within eighteen months of the date of the return of the indictment, hence the offense was not barred by the Statute of Limitations.

It is urged that the conspiracy between the plaintiff in error and Charles H. Bradley and the conspiracy between the plaintiff in error and John E. Seinwerth were separate and distinct conspiracies. From the time plaintiff in error qualified as circuit clerk, down to June 30, 1904, John E. Seinwerth had not entered into said conspiracy. On July 1, 1904, he became chief clerk under the plaintiff in error, and Charles H. Bradley acted thereafter as a deputy clerk. Bradley, however, remained in the office of the plaintiff in error and assisted in making out the fictitious pay-rolls, obtaining the fictitious warrants and procuring the money from the county treasury of Cook county thereon. John E. Seinwerth during that period was also engaged with the plaintiff in error and Charles H. Bradley, through fictitious pay-rolls and otherwise, in wrongfully obtaining money from the county treasurer of Cook county. No new conspiracy was formed, but John E. Seinwerth entered into the conspiracy which had already been formed. Every person entering into a conspiracy already formed is deemed, in law, a party to all acts done by any of the other parties, before or afterwards, in furtherance of the common design. *Ochs* v. *People, supra.*

It is also urged that the fees of the office of circuit clerk of Cook county belonged to the plaintiff in error for the eight years he was circuit clerk, and that he could not conspire with Bradley, nor with Bradley and Seinwerth, to obtain, by false pretenses, his own money. Under the pro-

visions of section 31 of chapter 53 of the Revised Statutes, the fees earned in the office of the circuit clerk of Cook county were the property of Cook county, and not the property of the plaintiff in error. Especially was this true after said fees had been paid over to the county treasurer of Cook county by the plaintiff in error. It was the custom in Cook county, during the term of service of the plaintiff in error, for the clerk of the circuit court to pay to the county treasurer, by check, a sufficient amount to satisfy the salary account of his office, and for the county treasurer to pay the salary account of said circuit clerk's office upon warrants drawn upon the county treasurer by the county comptroller.

It is next urged that the evidence does not establish the guilt of the plaintiff in error beyond a reasonable doubt. If the witnesses of the People whose testimony is not contradicted are to be believed, then the plaintiff in error and Charles H. Bradley from some time in the year 1897 up to June 30, 1904, and the plaintiff in error and Charles H. Bradley and John E. Seinwerth from July 1, 1904, to December 4, 1904, systematically robbed Cook county by foisting upon the comptroller and treasurer of said county padded pay-rolls. The question whether the witnesses for the People, corroborated as they were by the production of the false pay-rolls prepared by the plaintiff in error and his chief clerks, the warrants wrongfully obtained from the county comptroller based upon fraudulent pay-rolls, and the books of the Chicago National Bank, were to be believed, was a question for the jury, and the jury having found the plaintiff in error guilty upon what we think amounted to conclusive evidence of his guilt, we are not disposed to further consider the question as to whether or not the evidence established his guilt beyond a reasonable doubt.

It is next contended that the court erred in overruling plaintiff in error's challenge, for cause, to two jurors and forcing the plaintiff in error to challenge said jurors peremptorily, by means whereof, it is said, two of plaintiff in

error's peremptory challenges were wrongfully taken from him. The jurors referred to both stated upon their *voir dire* examination that they knew nothing of the cause other than what they had read in the newspapers with reference thereto, from which they had formed opinions which they had not expressed, but, regardless of what they had read, they were of the opinion they could give the plaintiff in error a fair and impartial trial upon the law and the evidence. We do not think that either of said jurors disclosed cause for challenge, and are of the opinion the court did not commit error in holding they were competent jurors. *Wilson* v. *People,* 94 Ill. 299; *Smith* v. *Eames,* 3 Scam. 76; *Spies* v. *People,* 122 Ill. 1, (particular page 261;) *Spies* v. *People,* 128 U. S. 131.

It is also urged that the State's attorney went outside of the record in his closing argument to the jury. We have read the closing argument of the State's attorney and do not think it susceptible of the construction put upon it by counsel for plaintiff in error. In any event, we are of the opinion that nothing occurred during the closing argument of the State's attorney which should work a reversal of the case.

It is finally contended that the court misdirected the jury as to the law of the case and refused proper instructions offered upon behalf of the plaintiff in error. We have carefully examined the instructions given and refused and are of the opinion the jury were fairly instructed as to the law governing this case. The given instructions of the People complained of, and those of the plaintiff in error refused, relate to the questions considered in this opinion, those given in favor of the People being in accord with the views herein expressed and those of the plaintiff in error refused being opposed to the views herein expressed.

Finding no reversible error in this record the judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*