THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, vs. MARC A. BLUMENBERG et al.—(WILLIAM GEPPERT, Plaintiff in Error.)

Opinion filed December 22, 1915.

1. CRIMINAL LAW—*when an indictment for conspiring to injure another is sufficient.* An indictment which charges, in the language of section 46 of division 1 of the Criminal Code, that the defendants conspired with intent to injure the character, business and property of a certain person, is not insufficient upon the ground that it does not allege that the defendants conspired to do anything but only that they conspired with intent to do, since the language of the statute, even though not grammatically exact, states the offense plainly enough to apprise the defendants of the charge.

2. SAME—*when indictment need not allege means by which act was to be accomplished.* An indictment for conspiracy to injure the character, business and property of another, or to do any other unlawful act, need not allege the means by which the act was to be accomplished, since the offense is complete when the agreement is made, even though no act is done to carry it into effect.

3. SAME—*each overt act is a renewal or continuance of the conspiracy.* Each overt act in furtherance of a conspiracy is a renewal of the conspiracy and a continuance of its existence so as to prevent the running of the Statute of Limitations, and since each overt act is a renewal of the conspiracy as to all the conspirators at the place where the overt act is done, it is not necessary to allege the exact place where the conspiracy was originally formed.

4. SAME—*what is not a variance between allegations and proof.* Where some counts of an indictment for conspiracy to injure the character, business and property of another and to extort money allege that the conspiracy was formed in Chicago and others in Will county, Illinois, it is not a variance that the proof shows the conspiracy was originally formed in New York, provided the proof shows overt acts in Will county in furtherance of the conspiracy.

5. SAME—*when venue of an indictment for conspiracy is not proved.* Where an indictment alleges that a conspiracy was formed in Will county, Illinois, and it is sought to sustain such allegation by proof of overt acts alone, the proof must show that the overt acts were done in Will county and must connect the defendants therewith, otherwise the allegation of venue is not proved.

6. SAME—*when remarks by an attorney as to the absence of co-defendant are improper.* On a trial for conspiracy to injure the

character, business and property of another it is error to permit the prosecution to show the absence of one of the co-defendants in a foreign country and argue from it that he had sought safety in flight, since the acts or declarations of co-conspirators before the conspiracy or after its termination are not competent evidence and could not be proved.

7. SAME—*practice of giving great number of instructions tends only to cloud the issues.* The object of instructing the jury is to clearly inform the jurors in a concise manner what the issues are, the principles of law to be observed and the facts material to be proved, and the practice of giving a large number of instructions stating substantially the same rules of law in varying form tends to confuse the jury and imposes unnecessary labor on the court.

8. SAME—*when Supreme Court may decline to consider argument on instructions.* Where the issues in the case do not require the large number of instructions presented to the court, ninety-one of which are given and a large number refused, the Supreme Court may decline to follow the argument of counsel by which they seek to justify or condemn each instruction.

WRIT OF ERROR to the Appellate Court for the Second District;—heard in that court on writ of error to the Circuit Court of Will county; the Hon. DORRANCE DIBELL, Judge, presiding.

BRUNDAGE, LANDON & HOLT, and EDWARD A. ALEXANDER, (BENSON LANDON, of counsel,) for plaintiff in error.

P. J. LUCEY, Attorney General, ROBERT W. MARTIN, State's Attorney, and GEORGE P. RAMSEY, (SNAPP, HEISE & SNAPP, of counsel,) for the People.

Mr. JUSTICE DUNN delivered the opinion of the court:

William Geppert was indicted, together with Marc A. Blumenberg, Thomas B. Thompson and Bernard S. Maloy, for conspiracy to injure the character, business, employment and property of John V. Steger and to extort money from him. Blumenberg was not arrested. Thompson and

Maloy were discharged before trial and Geppert was tried alone. He was found guilty and sentenced to pay a fine of $2000 and to be imprisoned for two years in the penitentiary. The Appellate Court affirmed the judgment, and he has sued out a writ of error to have the record reviewed.

The indictment consisted of five counts and it is insisted that each of them is insufficient in law. Three of the counts are based upon section 46 of the Criminal Code and are substantially alike. After reciting at great length the history of John V. Steger and his business enterprises, the relation of the defendants to him and to one another, and the fact that Blumenberg was in the control and management of a paper known as the *Musical Courier Extra,* of which Geppert was the editor, it is charged that the defendants did unlawfully and corruptly conspire, combine, confederate and agree together, between and among themselves, with the fraudulent and malicious intent wrongfully and wickedly to injure the character, business, employment and property of said John V. Steger, by uttering, composing, circulating and publishing, and causing to be composed, circulated and published, orally and in writing, particularly in and through said *Musical Courier Extra,* false, malicious, scandalous and defamatory matters of and concerning said John V. Steger. The third and fourth counts are common law counts, and charge the defendants with conspiring with the fraudulent, corrupt and malicious intent wrongfully and wickedly to extort from Steger large sums of money by like publications.

The first objection made to the indictment is that each count fails to allege that the defendants conspired to do anything but it is alleged only that they conspired with intent to do. The language of each count in this respect follows the language of the statute. It may be true that this language is not grammatically exact. The language is, that the defendants conspired with intent to injure Steger by making certain publications. The meaning is not different

from the charge that with intent to do so they conspired to injure Steger by making the publications. There is no substantial difference in the statements, and there can be no reasonable doubt as to the meaning of the language in this respect in each of the counts. The indictment is in the ordinary form in which indictments have been drawn upon which convictions have been affirmed in numerous cases. (*Cole* v. *People,* 84 Ill. 216; *Thomas* v. *People,* 113 id. 531; *Ochs* v. *People,* 124 id. 399; *Tedford* v. *People,* 219 id. 23; *People* v. *Nall,* 242 id. 284.) In other cases where the indictments were in like form the judgments have been reversed for reasons aside from the indictment, but the sufficiency of the indictment seems never to have been questioned. (*Evans* v. *People,* 90 Ill. 384; *People* v. *Hartsig,* 249 id. 348.) The indictment states the offense so plainly that its nature may be easily understood by the jury and that the defendants may know what they are accused of, and this is all that is required.

Another objection made to the indictment is that none of the counts state the elements of the conspiracy with sufficient particularity, and it is specially urged that the means by which the injury was to be caused are not averred. Section 46 of the Criminal Code, so far as applicable to this case, declares that "if any two or more persons conspire or agree together * * * with the fraudulent or malicious intent wrongfully and wickedly to injure the person, character, business, or employment, or property of another, * * * every such offender * * * shall be imprisoned," etc. A conspiracy is defined in Bishop's New Criminal Law (vol. 2, sec. 171,) as "the corrupt agreeing together of two or more persons to do by concerted action something unlawful either as a means or an end." A conspiracy to do an unlawful act by any means is an indictable offense, and so is a conspiracy to do any act by unlawful means. The unlawful act which it is the object of a conspiracy to accomplish need not itself be an offense against the crimi-

nal law. (*Smith* v. *People,* 25 Ill. 17.) There are unlawful acts which the law does not punish criminally. The common law does not limit conspiracies which are indictable and punishable as crimes to those formed to commit crimes, and the statute expressly denounces conspiracies to injure the character, person, business, employment or property of another. Such an injury is an unlawful act, and the section of the statute cited is expressly aimed against a conspiracy to do such act. Where a conspiracy is formed to do an unlawful act it is not necessary that the indictment should allege the means by which the act is to be accomplished. (*Smith* v. *People, supra; Thomas* v. *People, supra; Johnson* v. *People,* 22 Ill. 314; *Chicago, Wilmington and Vermilion Coal Co.* v. *People,* 214 id. 421; *People* v. *Smith,* 239 id. 91; *People* v. *Nall, supra.*) The essence of the offense is not the accomplishment of the unlawful object, but it is the unlawful combination or agreement to accomplish the criminal or unlawful purpose. It is unnecessary to prove any overt act toward the accomplishment of the unlawful purpose. The offense is complete when the agreement is made although no act is done toward carrying it into effect. The means to be employed to accomplish the unlawful purpose may never have been disclosed or may never have been agreed upon, so that they could not be stated, and yet the offense would be complete and might be proved by overt acts or other circumstances. *Johnson* v. *People, supra; Garland* v. *State,* 112 Md. 83; *Lanasa* v. *State,* 109 id. 602; *State* v. *Ripley,* 31 Me. 386; *State* v. *Crowley,* 41 Wis. 271; *Regina* v. *Banks,* 12 Cox's C. C. 393.

It is insisted that the evidence does not establish the conspiracy alleged in the indictment. The first, second and third counts alleged that the conspiracy was entered into in the city of Chicago in October, 1907, and the third and fourth counts allege a conspiracy entered into in Will county in March, 1912. It is urged that there was no

evidence that the defendants conspired in Cook county in October, 1907, or within eighteen months of that date, or in Will county in March, 1912, or within eighteen months prior to that time. The evidence tends to show the formation of a conspiracy in New York and its renewal in Chicago by acts done in furtherance of its purpose. It is contended that the evidence also tends to show overt acts committed in Will county. Although, as has been stated, the unlawful combination alone constitutes the offense of conspiracy and no act in furtherance of the unlawful design is necessary to complete the offense, yet every such act is regarded, in law, as a renewal or continuance of the unlawful agreement. (*People* v. *Mather,* 4 Wend. 229; *Bloomer* v. *State,* 48 Md. 521; *McKee* v. *State,* 111 Ind. 378; *Rex* v. *Brisac,* 4 East. 164.) A conspiracy once formed is presumed to exist whenever and wherever one of the conspirators does some act in furtherance of its purpose. We have held that the performance of an overt act continues the existence of a conspiracy so as to prevent the running of the Statute of Limitations. (*Ochs* v. *People, supra; Cooke* v. *People,* 231 Ill. 9.) Since each overt act is a renewal of the conspiracy, the offense is continuous so long as overt acts in furtherance of its purpose are done. The conspiracy is renewed as to all the conspirators at the place where the overt act is done, and it is not necessary to allege the exact place where the conspiracy was originally formed. (*Hyde* v. *United States,* 225 U. S. 347; *Brown* v. *Elliott,* id. 392.) It does not constitute a variance that the conspiracy is shown to be originally formed in New York if the evidence showed its renewal in Chicago and Will county by acts done to effect its purpose.

It is further contended that the venue in Will county was not proved, and this contention must be sustained. There is no claim that the defendants in the indictment actually entered into any conspiracy in Will county, and the venue in that county depends upon proof of the commis-

sion of an overt act.  It is argued on behalf of the People that Maloy and Thompson, two of the defendants named in the indictment, sought to obtain information in Will county concerning the business, property, employment and character of Steger for the purpose of the publications in the *Musical Courier Extra.*  Even if the acts relied upon in this connection were of such a character as to tend to show an overt act to effect the object of the conspiracy, there is no evidence that such acts were committed in Will county.  The testimony in regard to them is only that they occurred in the village of Steger, which was situated on the line between Will and Cook counties, and it is entirely consistent with the testimony that whatever occurred in this connection was in Cook county and not in Will county. The post-office in Steger was within Will county, and it was shown that two witnesses, in December, 1911, and January, 1912, received at the post-office, through the mail, copies of the *Musical Courier Extra.*  These witnesses were not subscribers for the paper and did not pay for the papers they received.  On the outside of the wrapper containing the papers were the words *"Musical Courier Extra."*  There was no testimony whatever connecting the plaintiff in error with the mailing of these papers.  George Steger testified that he had endeavored to ascertain the extent of the circulation of the *Musical Courier Extra* among the employees of Steger during the year prior to March 22, 1912, when the indictment was found; that he had seen residents on the Will county side of the village have the *Musical Courier Extra* prior to that time and secured about six or eight hundred copies from them.  These copies were not offered in evidence and it was not shown that any one of them contained any article with reference to John V. Steger or his business.  There was no evidence to connect the plaintiff in error with the delivery of any of these papers within Will county, and there was therefore a failure to prove the existence of the conspiracy in that county.

In his opening statement to the jury the State's attorney was permitted, over the objection of the plaintiff in error, to say that Blumenberg, one of the defendants, was absent, residing in Paris, and had not been in this country since the indictment was brought and for that reason was not on trial. The People were also permitted to show, over the plaintiff in error's objection, that Blumenberg was in Paris, and in the closing argument to state that if there was one man who could come here and assist the plaintiff in error in making his defense he had sought safety in France. It was error to permit the prosecution to show the absence of a co-defendant and to argue from it that he had sought safety from prosecution by flight. While the acts and declarations of a co-conspirator during the existence of the conspiracy are competent evidence against his co-conspirators, no act or declaration before the beginning of the conspiracy or after its termination can be given in evidence on the separate trial of a co-conspirator. It was also error to receive in evidence statements of Blumenberg made before any conspiracy was shown to have been formed.

The evidence of the witness Haverly, and his books of account in corroboration of his evidence, were received to show that the plaintiff in error was in New York at the time when it was claimed that certain conversations occurred between him, Blumenberg and the witness Couchois. The evidence was incompetent and was afterward stricken out by the court, but it is contended that it was of such a character that it could not thus be erased from the minds of the jury. Since the judgment must be reversed it is not necessary to pass upon this question.

The court erroneously permitted to be read in the presence of the jury an article written by Blumenberg and published in the *Musical Courier Extra* in 1903 laudatory of Fischel, who was a material and important witness for the prosecution. The plaintiff in error contradicted Fischel in

his testimony, and the introduction of this article, which tended to sustain Fischel's credibility, was improper.

There are other errors of less importance in regard to the admission of evidence and the argument of counsel which are not likely to occur upon another trial and will therefore not be discussed.

An unreasonable number of instructions was presented to the court upon the trial of this case. Ninety-one were given,—forty-two for the People and forty-nine for the plaintiff in error. They fill more than forty pages of the printed abstract. Ten pages more are occupied by instructions asked by the plaintiff in error and refused. Nineteen of the People's instructions were objected to, and great refinement of reasoning is used in the discussion of them. It would be tedious and unprofitable to set them out at length or consider them in detail. The object of instructing the jury is to clearly inform them, in a concise and comprehensive manner, what the issues are, the principles of law to be observed and the facts material to be proved to justify their verdict. The practice of asking a great many instructions stating substantially the same rule of law in slightly varying forms of expression, serves only to cloud the issues, is confusing to the jury and imposes unnecessary labor on the court. The issues in this case did not require the great volume of instructions thrust upon the court at the conclusion of the trial, and we do not feel justified in taking the time to follow counsel on either side through the elaborate arguments by which they seek to justify or condemn each particular instruction.

For the errors indicated the judgments of the circuit and Appellate Courts are reversed and the cause remanded.

*Reversed and remanded.*