(Nos. 17375-17376.—Judgment affirmed.)

The People of the State of Illinois, Defendant in Error, *vs.* Michael Glassberg *et al.* Plaintiffs in Error.

*Opinion filed June 22, 1927—Rehearing denied October 5, 1927.*

1. Criminal law—*what is proper venue in charging conspiracy.* The venue of a conspiracy to do illegal acts injurious to the public trade, or to do any other illegal acts, is properly laid in the county in which the unlawful agreement is made; and it may also be properly laid in any county in which overt acts were done by the alleged conspirators in carrying out the conspiracy, as the gist of the offense is the unlawful agreement.

2. Same—*overt illegal act need not be proved to establish conspiracy.* In a charge of conspiracy the essence of the offense is the unlawful combination or agreement to accomplish the criminal or illegal act, and it is unnecessary to prove any overt act toward the accomplishment of the unlawful purpose, as the offense is complete when the unlawful agreement is made between the defendants to do illegal acts, without regard to whether or not any of the acts are ever committed.

3. Same—*when indictment for conspiracy is sufficient.* An indictment for conspiracy is sufficient which charges the offense in the language of the statute; and it is not necessary to allege the means by which the unlawful act is to be accomplished, as a conspiracy to do an unlawful act by any means is an indictable offense.

4. Same—*what is proper charge of conspiracy to injure public trade by violation of Securities act.* A charge that the defendants conspired with fraudulent intent to knowingly and willfully offer to file and file with the Secretary of State false statements, inventories and appraisements of the assets of a corporation to meet the requirements of section 9 of the Securities law, is a proper charge of conspiracy to do illegal acts injurious to the public trade; and it is not necessary that the indictment in such case charges the defendants with doing or attempting to do the illegal acts in question as officers of the corporation.

5. Same—*illegal act which is object of conspiracy need not be criminal offense.* In an indictment for conspiracy it is sufficient if the object of the conspiracy is charged to be any illegal act which by reason of the combination has a harmful effect upon society and the public, and it is not necessary that the object of the conspiracy constitute an offense against the criminal law for which an individual might be indicted and convicted.

6. Same—*indictment need not be grammatically exact.* It is not necessary that the language of an indictment be grammatically

exact if the offense charged is stated plainly enough to be readily understood by the jury and to enable the defendants to properly prepare their defense.

7. SAME—*technical objections to indictment are waived after trial.* Under section 9 of division 11 of the Criminal Code technical objections to the indictment arising under strict rules of pleading must be made before trial and are waived by failing to move to quash or otherwise attack the sufficiency of the indictment before trial and verdict, and such objections cannot be raised by motion in arrest of judgment.

8. SAME—*when instruction as to verdict, without referring to count, is not prejudicial.* Where an indictment originally consisted of three counts, two of which are dismissed by the prosecution, an instruction telling the jury, in substance, what their verdict should be if from the evidence they found the defendants guilty, beyond all reasonable doubt, in manner and form as charged in the indictment, is not prejudicial in failing to single out the remaining and only count upon which conviction could be had, where other instructions clearly tell the jury of the election to rely on the one count, only, and that they should not consider the dismissed counts.

9. SECURITIES—*purpose of the Securities law.* The purpose of the Securities law is to prevent the sale and disposition of fraudulent securities and to protect the public from the dishonesty and irresponsibility of persons engaged in disposing of securities of uncertain values.

10. SAME—*meaning of word "filed" as used in Securities law.* The word "filed," as used in section 32 of the Securities law, means the depositing of the instruments in the office of the Secretary of State to be marked "Filed" by him.

WRITS OF ERROR to the Third Division of the Appellate Court for the First District;—heard in that court on writs of error to the Criminal Court of Cook county; the Hon. WELLS M. COOK, Judge, presiding.

WILLIAM S. FORREST, and BENJAMIN C. BACHRACH, for plaintiffs in error.

OSCAR E. CARLSTROM, Attorney General, ROBERT E. CROWE, State's Attorney, and S. S. DUHAMEL, (EDWARD E. WILSON, and JOSEPH P. SAVAGE, of counsel,) for the People.

Mr. Justice Duncan delivered the opinion of the court:

Plaintiffs in error, Michael Glassberg and Morris Markin, (herein called defendants,) were jointly indicted in the criminal court of Cook county for conspiracy to do illegal acts injurious to the public trade. They were found guilty by a jury as charged in the indictment, and after motions for a new trial and in arrest of judgment were overruled each was sentenced to thirty days in jail and to pay a fine of $2000. The Appellate Court for the First District affirmed the judgment, and a writ of error is prosecuted by each of the defendants to review the record. The separate writs of error have been consolidated, as the record in each case is identical.

The indictment consisted of three counts, the second and third of which were *nollied* by the People. The first count of the indictment charges, in substance, that the defendants did on May 31, 1922, in Cook county, Illinois, unlawfully, willfully, fraudulently and deceitfully conspire, combine, confederate and agree with each other and with Eugene L. Garey with the fraudulent and malicious intent unlawfully, wrongfully and wickedly to do illegal acts injurious to the public trade, that is to say, to knowingly, fraudulently and willfully

(1) offer to file and file with the Secretary of State of the State of Illinois a false, untrue and fraudulent balance sheet of and concerning the Checker Cab Manufacturing Corporation, a corporation, and then and there to set out an untrue, false and fraudulent statement of the assets, liabilities and net worth of the said corporation, and to falsely, willfully and fraudulently recite in and by said balance sheet that the said corporation then and there owned and possessed as a part of the assets of such corporation notes receivable in the sum of $5426.94, when and while the said corporation then and there had no notes receivable;

(2) and to offer to file and file with the Secretary of State aforesaid a certain schedule of and concerning the

notes and accounts receivable of said corporation and to fraudulently, falsely and willfully recite therein among the notes and accounts receivable of said corporation that it then and there possessed notes and accounts receivable, to-wit, note of Abr. Lomberg, in the sum of $5426.94, when and while the said Abr. Lomberg was not then and there indebted to the said corporation, and had not made his note in any sum whatever in the premises;

(3) and to offer to file and file with the Secretary of State aforesaid a certain schedule of the machinery and equipment owned and possessed by the said corporation and to falsely, fraudulently and willfully recite therein that the said corporation was then and there possessed of and owned a certain jig, to-wit, main body jig of the book value, after allowing for depreciation thereof, of $6500, when in truth and in fact the said main body jig was then and there of a value not to exceed $500;

(4) and to offer to file and file with the Secretary of State aforesaid in and as a part of said schedule of said machinery and equipment of the said corporation that said corporation then and there owned and possessed a sample body of the book value, after allowing for depreciation thereof, in the sum of $25,000, and in addition thereto that the engineering and designing of the sample body aforesaid was of the book value, after allowing depreciation thereof, of the sum of $15,000, when and while the said sample body aforesaid was of a value not to exceed, to-wit, $1000;

(5) and to offer to file and file with the Secretary of State aforesaid in and by a schedule of notes and accounts payable of and concerning the said corporation, a false, fraudulent and untrue statement of the notes and accounts payable of said corporation and to knowingly, willfully and fraudulently omit from the said schedule of notes and accounts payable divers notes and accounts payable in the sum of $28,000;

(6) and to offer to file and file with the Secretary of State aforesaid a false and fraudulent detailed itemized statement of consideration received for each and all issued and outstanding securities of said corporation, and to falsely, willfully and fraudulently recite therein that "100 shares of preferred stock and 22,500 shares of common stock no par value" of the stock of the said corporation, was issued and outstanding "for which there was assigned on April 20, 1922, to the 'issuer' " (meaning said corporation) "the entire assets of the Markin Auto Body Corporation, a corporation of Illinois, subject, however, to the assumption and agreement by the 'issuer' to pay all the liabilities of said Markin Auto Body Corporation. The net value thereof was appraised at $182,703.28" (meaning thereby that the net value of the Markin Auto Body Corporation assets was appraised at $182,703.28 and that same had been received as a consideration for 100 shares of preferred stock and 22,500 shares of common stock no par value of Checker Cab Manufacturing Corporation, a corporation, and that the assets of Markin Auto Body Corporation, a corporation, were of a fair value of $182,703.28) when in truth and in fact the net value of the assets of the said Markin Auto Body Corporation were of a value not to exceed $50,000;

(7) and to offer to file and file with the Secretary of State aforesaid divers other false, fraudulent and willful misrepresentations of and concerning the assets, liabilities and net worth of the said Checker Cab Manufacturing Corporation, a corporation, in and by the said balance sheet, schedules and documents required by law to be filed with the Secretary of State aforesaid in the matter of the sale of stock of corporations in class "D" as classified by the statute in such case made and provided;

(8) and to then and there unlawfully, knowingly and willfully offer for sale and to unlawfully, knowingly and

willfully sell shares of stock of the said Checker Cab Manufacturing Corporation, a corporation, in violation of the Illinois Securities law, to the public generally, contrary to the statute, etc.

The indictment charges the defendants with a conspiracy to do illegal acts injurious to the public trade and is drawn under section 46 of the Criminal Code, which provides that if any two or more persons conspire or agree together with the fraudulent or malicious intent wrongfully and wickedly to do any illegal act injurious to the public trade, they shall be deemed guilty of a conspiracy and shall be fined not exceeding $2000, or be imprisoned in the county jail not exceeding one year, or shall be imprisoned in the penitentiary for a term not less than one year and not exceeding five years, or may be so fined and so imprisoned in the county jail or the penitentiary.

In the original indictment the first count is written as a continuous single sentence and punctuated substantially as above set forth, without any numbered paragraphs. We have paragraphed this count of the indictment and numbered the paragraphs as above set forth merely for the purpose of discussion. In these eight numbered paragraphs are set forth the illegal acts alleged to be injurious to the public trade, and they are alleged under a *videlicet,* and are also preceded by the words "to knowingly, fraudulently and willfully," which quoted words should be and are construed to precede and modify the first seven numbered paragraphs. This is indicated by the context of this count, and also by the further fact that the eighth numbered paragraph contains words similar to the quoted words aforesaid. The first seven numbered paragraphs set out seven illegal acts alleged to be committed by the defendants, in all of which it is stated, in substance, that the defendants did offer to file and file with the Secretary of State a balance sheet, statement, schedule and inventory of and concerning the assets of the Checker Cab Manufacturing Corporation, a

corporation, which documents were required to be filed with the Secretary of State in the matter of the sale of stock of corporations in class "D" as classified by the statute in such case made and provided, and it is alleged in all of said paragraphs that the documents were false, fraudulent and untrue statements of and concerning said assets. The indictment then closes with the eighth statement, that the defendants then and there unlawfully, knowingly and willfully did offer for sale and sell to the public generally, shares of stock in the Checker Cab Manufacturing Corporation.

The defendants pleaded to the indictment without first raising any objections to it by motion to quash or otherwise. After the verdict was rendered, and after the motion for a new trial was overruled, they sought to attack the indictment by motion in arrest of judgment, and under that motion they insist in this court that it must be held to be bad and insufficient to support the verdict and judgment, and they set forth a very great number of alleged grounds in support of their motion, among which are the following:

(1) The matters and things charged in the first count of the indictment do not constitute an offense against the laws of the State.

(2) The allegations in that count fail to show an offense against the laws of the State with the certainty required by law.

(3) The count is bad for uncertainty.

(4) The count is bad for want of the following allegations: (a) An allegation showing that at least two of the alleged conspirators were officers of the Checker Cab Manufacturing Corporation, with a specification of the offices held by them; (b) an allegation showing that the purpose of the offer to file, and file, the statement, balance sheet, schedule, documents, the misrepresentations, and other papers, was to procure the examination and the filing of the same in the office of the Secretary of State by the Secretary of State in order thereby to qualify the shares of stock of

326–25

the corporation as securities in class "D" under the Illinois Securities law; (*d*) an allegation showing that the statement, balance sheet, schedule, etc., were each to be signed by two officers of the corporation and to be verified by their oaths, to be taken before an officer authorized to administer oaths in this State; (*e*) an allegation that the statement, balance sheet, etc., were to be in writing; (*g*) an allegation showing wherein the balance sheet was or would be "a false, untrue and fraudulent balance sheet of and concerning" the corporation, together with a *scienter;* (*h*) an allegation showing wherein the statement mentioned in said count of the assets, liabilities and net worth of the corporation was or would be untrue and false, together with a *scienter;* (*j*) an allegation of the *scienter* of the alleged fact that the corporation had no notes receivable; (*m*) an allegation denying that the book value of the main body jig mentioned in said count, after allowing for depreciation thereof, was $6500, and averring the true book value thereof; (*o*) an allegation denying that the book value of the sample body mentioned in said count, after allowing for depreciation thereof, was $25,000, and averring the true book value thereof; (*r*) an allegation showing and designating with reasonable certainty the divers notes and accounts payable which it is alleged in said count were to be omitted from the schedule of notes and accounts payable, or showing that the notes and accounts payable to be omitted from the schedule were unknown, together with a *scienter;* (*t*) an allegation showing wherein the detailed itemized statement of consideration mentioned in the first count was or would be false, together with a *scienter;* (*u*) an allegation showing with reasonable certainty the divers other false, fraudulent and willful misrepresentations mentioned in the first count, together with an allegation showing wherein the misrepresentations were or would be false, together with a *scienter;* (*v*) an allegation showing with reasonable certainty wherein the offering for sale and the

selling of shares of stock of the corporation to the public generally would be in violation of the Securities law, and thereby showing which one or more, if any, of the following sections of the Securities law would be violated by such offering for sale and selling of said shares of stock, to-wit, sections 29, 30, 31, 32, 33, 34, 36 and 37.

(6) The allegation to offer to file and to file with the Secretary of State, wherever it appears in the count, is bad, as the Securities law provides that all the statements, documents and other papers which are required by said law to be filed in order to qualify the securities of any corporation as securities in class "D" must be filed in the office of the Secretary of State and by the Secretary of State.

(7) It is legally and physically impossible for any person other than the Secretary of State, or one of his duly authorized deputies, to file in the office of the Secretary of State said statement, balance sheet, schedule, etc.

(8) Each and every allegation in the count of each and every of the purposes of the conspiracy sought to be charged therein (except possibly the purpose to offer for sale and to sell shares of stock of the corporation) is a nullity, as the complete and successful execution of all and each of said purposes could not possibly work or cause any harm, danger or fraud to the public or to any person whatever.

(11) All the allegations in the count which purport to charge the purpose to offer for sale and to sell shares of stock of the corporation to the public generally, in violation of the Securities law, are nullities, because they fail to show that the shares of stock were in class "D" under the Securities law.

(13) The first count is bad because the word "there," wherever said word appears as an allegation of the place where any one or more of the purposes sought to be charged were to be executed, renders it uncertain whether it is charged that such purpose or purposes were to be executed in the county of Cook or in the county of Sangamon.

This is especially true if the allegation in the first count, "with the Secretary of State," be construed to mean "in the office of the Secretary of State."

The venue of a conspiracy to do illegal acts injurious to the public trade, or to do any other illegal acts, is properly laid in the county in which the unlawful agreement is made, and it may also be properly laid in any county in which overt acts were done by the alleged conspirators in carrying out the conspiracy, as the gist of the offense is the unlawful agreement. The statute punishes the act of conspiring to do certain wrongful acts without regard to where such wrongful acts are to be committed, and it does not matter that the wrongful acts are to be committed in a county other than where the conspiracy was entered into or whether or not they are to be committed in another State. The offense is complete when the unlawful agreement is made between the defendants to do illegal acts without regard to whether or not any of the illegal acts are ever committed, as it is the conspiracy with intent to commit illegal acts that constitutes the crime charged in all conspiracies, under the statute. For the same reason it would make no difference that defendants charged with a conspiracy and shown to have entered into it to do illegal acts, afterwards ascertained the matter of doing the illegal acts was not within their power or within their capacity. As the essence of the offense charged in this case is the unlawful combination or agreement to accomplish the criminal or illegal act, it is unnecessary to prove any overt act toward the accomplishment of the unlawful purpose. This court has therefore often held that an indictment is sufficient which charges the offense in the language of the statute, and it is not necessary to allege the means by which the unlawful act is to be accomplished, as a conspiracy to do an unlawful act by any means is an indictable offense. (*People* v. *Blumenberg,* 271 Ill. 180; *People* v. *Buckminster,* 282 id. 177; *Chicago, Wilmington and Vermilion*

*Coal Co.* v. *People,* 214 id. 421; *Smith* v. *People,* 25 id. 9.)
We may further say that we do not concur with the view
of the defendants that the offense with which they are
charged could only be committed by officers of the Checker
Cab Manufacturing Corporation, or that it is necessary to
charge them with doing or attempting to do the illegal acts
in question as officers of the corporation, or to allege that
the balance sheet, schedule, inventory, etc., were in writing
and subscribed and sworn to as officers of the corporation.
Neither was it necessary that the object of the conspiracy
constitute an offense against the criminal law for which an
individual might be indicted and convicted. (*Smith* v. *People, supra.*)    It is sufficient if the object of the conspiracy
is charged to be any illegal act which by reason of the com-
bination has a harmful effect upon society and the public.
It is not necessary that the language of the indictment be
grammatically exact if the offense with which the defend-
ants are charged is stated plainly enough to be readily un-
derstood by the jury and to enable the defendants to prop-
erly prepare their defense.   *People* v. *Lloyd,* 304 Ill. 23.

It sufficiently appears from the indictment that the
first seven illegal acts were committed by the defendants
for the purpose of qualifying the stock or securities of the
Checker Cab Manufacturing Corporation for sale to the
public as class "D" securities under the Securities law, and
that such illegal acts were necessarily injurious to the pub-
lic trade and the conspiracy to commit such illegal acts is
so plainly and fully stated as to enable the defendants to
properly and fully prepare their defense to such charge,
and the record in this case shows they did so prepare their
defense.   Under the Securities law the public, in purchas-
ing class "D" securities, must necessarily depend upon the
showing in the office of the Secretary of State made by any
individual or corporation as to the character, the amount
and value of its assets, in determining for themselves the
value of the securities offered for sale.   The representation

and showing of the assets in the office of the Secretary of State are made under oath by parties who are either agents or officers of the corporation. The copies of the summary statement required to be filed with the Secretary of State by the provisions of section 15 of the Securities law are headed in bold-face type with these expressions: "Securities in class 'D' under Illinois Securities law: These are speculative securities." "This statement is prepared by parties interested in the sale of securities herein mentioned. Neither the State of Illinois nor any officer of the State assumes any responsibility for any statement contained herein nor recommends any of the securities described below." Section 21 of the act provides that each financial statement, prospectus, advertisement, circular and document circulated, published or distributed, for the purpose of effecting sales of securities in class "D," shall contain the words in bold-face type, "Securities in class 'D' under Illinois Securities law. These are speculative securities." Section 22 of the act provides that the Secretary of State shall, upon request therefor, mail or deliver to any person a copy of the summary of the statements or a supplemental statement required to be deposited in his office. It thus appears that the sworn statements of the assets and liabilities, and all other statements filed in the office of the Secretary of State with reference to class "D" securities, are filed for the benefit of any purchaser or other person who may desire to ascertain the value of such securities offered for sale. It is therefore undoubtedly injurious to public trade, or to the public who may purchase such securities, for the issuer or his agents or officers to falsify the assets and liabilities of such issuer in the manner alleged in this indictment. The very purpose of the Securities law is to prevent the sale and disposition of fraudulent securities and to protect the public from the dishonesty and irresponsibility of persons engaged in disposing of securities of uncertain values. *Stewart v. Brady,* 300 Ill. 425.

No one of the specific allegations of illegal acts injurious to the public trade is insufficient for want of a *scienter* or an allegation of knowledge of the defendants which is necessary to charge them with the consequences of the crime charged. As we have already indicated, every false and fraudulent mis-statement of the assets and liabilities of the corporation is alleged to have been knowingly and willfully made, and it is also alleged that such acts injurious to the public trade were unlawfully, willfully, fraudulently and deceitfully made.

The Illinois Securities law does require the filing of the balance sheet, schedules and documents mentioned in the indictment. The argument that the making of a false statement in the balance sheet, schedules and documents aforesaid is not prohibited by the Securities law is without merit. Section 9 of that act provides for the filing of such documents in the office of the Secretary of State before any security in class "D" shall be offered for sale, and that such documents shall, except as otherwise provided therein, be verified by the oath of not less than two of the officers of the issuer, if the issuer be a corporation. Among the documents mentioned in that section to be filed, is an inventory showing the assets of the issuer, an appraisement of the assets of the issuer, and a copy of the most recent balance sheet. By section 10 of the act there is required to be filed with the inventory an appraisement of the assets described in the inventory by disinterested, qualified persons, verified by their oaths. By section 25 of the act the Secretary of State is given power to make all needful rules and regulations to carry the act into effect and to prescribe the forms of all statements, documents and summaries required by the act. Section 33 of the act declares, in substance, that any person shall be deemed guilty of perjury, and subject to the penalties therefor, who shall sign and file with the Secretary of State any statement, list, inventory, balance sheet or other paper or document required to be filed by

the act and verified by his oath, knowing that any representation therein contained is false and untrue.

The contention of the defendants that it was impossible for them to file any documents under the Securities law is sought to be sustained by the fact that section 2 of the act defines the word "file" or "filing" to mean the endorsement by the Secretary of State on any statement or document received, the word "Filed," followed by the month, day, year, name of the Secretary of State, etc. In section 32 of the act this language is used: "the statements and documents filed by the issuer in the office of the Secretary of State." In that section, and in the indictment, the word "file" is used in its ordinary sense of "deposit with," and the defendants' objection is untenable.

It is also contended that the statement of the illegal acts set out under the *videlicet* in paragraphs 3 and 4 as we have numbered them is defective because neither statement denied that the book value was as alleged but merely stated that the actual value did not correspond with the book value. It is not necessary to discuss the objection, as the matters stated in both of those paragraphs were provable under the statement in paragraph 7.

Section 9 of division 11 of the Criminal Code provides that all exceptions that go merely to the form of an indictment shall be made before trial, and no motion in arrest of judgment, or writ of error, shall be sustained for any matter not affecting the real merits of the offense charged in the indictment. The strict rules of pleading called for by the defendants as outlined in their many objections can not now be insisted on by them, as they were waived by failing to move to quash or otherwise attack the sufficiency of the indictment before trial and verdict, if it be conceded that there are technical objections for want of further particularity in the allegations that might have been taken advantage of on motion to quash. *Young* v. *People*, 193 Ill. 236.

The People, to sustain the indictment, offered in evidence the documents, statements, balance sheets, inventories and other papers which were filed in the office of the Secretary of State with reference to qualifying the securities of the Checker Cab Manufacturing Corporation for sale as class "D" securities. The proof offered by the People showed that these papers and documents purported to be signed and sworn to by the defendant Markin and Eugene L. Garey as president and secretary of the corporation, and some of the documents are also signed and sworn to by the defendant Glassberg. The documents are numerous and some of them are very lengthy, and they are such documents, in form and in substance, as are required to be filed by the Securities law. These documents are headed with a statement in bold-face type, as follows: "Securities in class 'D' Illinois Securities law: These are speculative securities. This statement is prepared by parties interested in the sale of securities herein mentioned. Neither the State of Illinois nor any officer of the State assumes any responsibility for any statement contained herein nor recommends any of the securities described below." Then follows the statement on behalf of the corporation that it is proposed to offer for sale 2500 shares of the preferred capital stock of the issuer, having a par value of $100 per share. One share of no par value common stock is to be given as a bonus with each share of preferred stock sold. All of the no par value common stock has been issued, and the owners and holders thereof have turned over and delivered to the company 2500 shares of no par value common stock, with directions that there be transferred and delivered as a bonus to the purchasers of the preferred stock proposed to be sold, one share of no par value common stock with each share of preferred stock purchased. The issuer, by resolution duly adopted, accepted the offer and is now in possession of the stock. The name of the issuer is Checker Cab Manufacturing Corporation. The

issuer was incorporated on April 18, 1922, under the laws of Delaware. The corporation was organized to manufacture, build, construct, buy, sell and generally deal in motor trucks, automobiles and motor vehicles, together with all machinery and equipment necessary for the same; to build, erect, construct, buy, sell and generally deal in all kinds of mechanical and electrical machinery; to buy, sell and generally deal in all kinds of goods, wares and merchandise, and to own, hold and acquire patents, applications for patents, inventions and patent rights pertaining to all kinds of vehicles, machinery and equipment. The amount of authorized capital stock of each class is, preferred stock $1,000,000; common stock 25,000 shares, no par value. The amount of common stock issued and outstanding at the date of filing the statement is 25,000 shares, no par value, and the amount of preferred stock issued and outstanding at the date of filing the statement is $10,000, of the par value of $100, etc.

It was clearly proved that the papers and documents filed or caused to be filed by the defendants showed the assets of the corporation to be very much more than was their actual or fair cash value, and also that the liabilities were very greatly understated, and that the defendants well knew that the documents and schedules were so falsified. The proof further showed that the property and machinery of the corporation were very much overstated in the inventories and schedules, and that the property and machinery were also appraised and valued under oath by two disinterested parties, in accordance with the requirements of the statute. One of these parties stated on the witness stand that he was called to Chicago from Peoria by the Chicago officers of the company and was asked by the defendant Glassberg, after he reached the Chicago office of the company, to sign and swear to the inventory and schedules of the machinery and property, which documents had already been prepared before he reached the office, including the

falsified values of the machinery and property, and that he was asked to swear to the same by Glassberg, and did swear to them without having examined or looked into the value of the machinery and property so inventoried and scheduled. He at first declined to subscribe and swear to the statements, stating, in substance, that he did not have any right to sign or verify such inventories and schedules without knowing something about the valuations, but he was finally induced by Glassberg to sign and verify the same after being assured and re-assured that the inventories and schedules were correct and that it would be all right for him to sign and verify the same. The proof further shows that the other disinterested party made inventories and schedules of certain of the property and machinery, and in those schedules and inventories he valued according to his own judgment the several items of machinery, property and supplies of the company at their fair cash value. He further testified that the valuations of the machinery, property and supplies as made by him were raised, and that, in fact, his valuations were raised in almost every item valued by him, and the proof tends strongly to show that Glassberg made these changes in such valuations, or had it done, while the schedules and inventories were in his hands as vice-president and treasurer of the company. The proof shows, without doubt, that both of the defendants knew that the assets of the corporation were greatly overvalued and that the liabilities were understated. The evidence is so voluminous that we do not regard a further discussion of it as necessary. The defendants offered no evidence whatever and the case went to the jury on the evidence introduced by the People.

The defendants objected to practically all of the evidence offered by the People. The majority of these objections was based on their contention that the indictment did not state a criminal offense against them. We have examined these several objections and are satisfied that

no reversible error was committed against the defendants. The court was rather strict in his rulings on the admissibility of evidence and in his rulings gave the benefit of all doubts to the defendants, and we see no just ground of complaint by the defendants as to the court's rulings on the evidence.

Almost all of the instructions given on behalf of the People by the court were objected to by the defendants, and they contend in this court that the court erred in the giving of a very great number of the instructions. We have examined all of the instructions given on behalf of the People and on behalf of the defendants, and also the instructions of the defendants that were refused by the court. Numerous instructions were offered by the defendants that were given, and quite a number of instructions were also given by the People. A careful examination of all of them convinces us that the law of the case was fully stated by the court to the jury. Some of them are faulty in some particulars but no reversible error appears in the instructions as a series.

Particular objection was made by the defendants to the People's instruction which told the jury, in substance, what their verdict should be if from the evidence they found the defendants guilty in manner and form as charged in the indictment, beyond all reasonable doubt. The real objection raised to this instruction is that as the second and third counts of the indictment were *nollied* or dismissed by the People only the first count of the indictment should have been referred to in the instruction, that the direction of the court to find the defendants guilty in manner and form as charged in the indictment was misleading, and that the jury were warranted by that instruction in considering all three of the counts of the indictment in making their finding. The thirty-third instruction given on behalf of the defendants in very plain words told the jury that the prosecution had elected to rely on the first count, only, of the

indictment, and that they should entirely dismiss from their consideration the second and third counts of the indictment. Other instructions given by the court made it very plain that the jury should only take into consideration the charge under the first count. In other words, the jury were clearly informed that the indictment, so far as they were to consider it, consisted only of the first count, and the defendants could not be, and were not, prejudiced by the giving of this instruction.

Neither were the defendants prejudiced by the refusal of the court to give to the jury any of the defendants' refused instructions. While several of them may be correct instructions and applicable to the case, it is also true that what was contained in these instructions beneficial to the defendants was covered by other instructions offered by them that were given to the jury.

The contention is well taken that certain of the exhibits that were marked for identification in the trial and used by the witnesses to refresh their recollections were erroneously allowed by the court to be taken by the jurors to the jury room for consideration in making up their verdict. The error, however, was harmless, as such exhibits could in no manner prejudice the jurors in making up their verdict.

There is no merit in the contention that the jurors were prejudiced by the misconduct of the State's attorney.

We have considered all of the contentions of the defendants that were made in this court, although there are many that we have not specifically discussed in detail or otherwise, and we are clearly satisfied that there was no reversible error committed in this case.

The judgment of the Appellate Court is therefore affirmed.

*Judgment affirmed.*