## FIRST NAT. BANK OF CIRCLEVILLE *v.* BANK OF MONROE.

*(Circuit Court, N. D. New York. December 29, 1887.)*

1. BANKS AND BANKING—DRAFTS FOR COLLECTION—APPLICATION TOWARDS ACCOUNT.

Plaintiff sent to F. bank a draft indorsed "for collection," accompanied with instructions to "collect and credit proceeds." F. bank sent the draft to the defendant, and the latter collected it, received the proceeds. and credited them to the F. bank, in accordance with the usual course of business between the F. bank and the defendant, and notified the F. bank of the credit. The F. bank suspended business before crediting plaintiff with the proceeds, but

after they had been collected and after it had received notice of the credit. After the suspension of the F. bank, the receiver appointed over its affairs credited plaintiff with the proceeds of the draft on the books of the bank. *Held,* that the indorsement "for collection" was notice to the defendant of the qualified title of the F. bank. and defendant could not acquire any better title to the draft or the proceeds than that of the F. bank, and could not, as against the plaintiff, apply the proceeds to an account owing the defendant from the F. bank; and that the defendant could only defeat an action brought to recover the proceeds in its hands by showing that the draft or its proceeds belonged to the F. bank.

2. SAME.

*Held, further,* that the relation of principal and agent continued between the plaintiff and the F. bank so long as the latter did not assume the relation of primary debtor to the plaintiff for the proceeds of the draft: that the plaintiff not having been credited with the proceeds by the F. bank, the relation between them remained that of principal and age t. and not debtor and creditor: and that the F. bank, not having credited the plaintiff with the proceeds while it was a going concern, could not, by doing so subsequently, change the existing relation.

3. SAME.

*Held,* in an action brought by the plaintiff against the defendant to recover the proceeds of the draft, the defendant not having remitted the proceeds to the F. bank was liable to the plaintiff for the amount.

At Law.  Suit to recover money collected.

Suit by First National Bank of Circleville, plaintiff, against the Bank of Monroe, defendant, to collect proceeds of a draft.

*Forbes, Brown & Tracy,* for plaintiff.

*A. C. Smith,* for defendant.

WALLACE, J.  This action is brought to recover the proceeds of a draft of $3,095, drawn upon Warner & Co., of Rochester, New York, and accepted payable at the defendant's banking-house at that place.  The draft matured June 18, 1887, and was paid on that day to the defendant.  The plaintiff became the owner of the draft prior to May 23, 1887, and on that day transmitted it by mail to the Fidelity National Bank of Cincinnati, indorsed "For collection, for First National Bank of Circleville," accompained with instructions "For collection and credit."  May 25th, the Fidelity Bank transmitted the draft by mail to the defendant, indorsed "For collection, Fidelity National Bank, Cincinnati," accompanied with instructions to collect and credit the proceeds to the Fidelity Bank.  For a considerable time prior to May 23d the plaintiff had kept an account with the Fidelity Bank, and the latter had collected negotiable paper for the plaintiff, and, by the course of business, the collections when made to the plaintiff were credited by the Fidelity Bank, and the amount after notice of the credit.  The plaintiff was allowed interest by the Fidelity Bank upon daily balances.  The Fidelity Bank sent the draft for collection to the defendant, pursuant to an arrangement by which each sent to the other commercial paper for collection; it being understood that the proceeds were not to be specifically returned, but were to be credited to the sending bank by the receiving bank, and enter into a general account between them consisting of such collections and other debit and credit items.  When the draft was paid by the drawee to the defendant,

the latter credited the Fidelity Bank with the proceeds, and notified the Fidelity Bank by due course of mail; and June 21st the Fidelity Bank charged the defendant on its books with the proceeds. The Fidelity Bank suspended business at the close of the day of June 20th, being then insolvent, and did not resume business, and passed into the hands of a receiver. After this, on July 21st, the plaintiff was credited on the books of the bank the proceeds of the draft. When the Fidelity Bank failed it owed a balance of $2,634 on the account to the defendant, exclusive of the proceeds of the draft.

Upon these facts it appears that the relations between the defendant and the Fidelity Bank in respect to paper received by the former from the later for collection were those of debtor and creditor, and not merely of agent and principal, (Morse, Banks, 52;) and the defendant, having received the paper with the right to appropriate its proceeds upon general account, to offset or apply upon any indebtedness existing or to accrue from the Fidelity Bank, growing out of the transactions between the two banks, was a holder for value. *Bank* v. *Railroad Co.*, 14 Blatchf. 242, affirmed 102 U. S. 14. If the defendant had been justified in assuming that the draft was the property of the Fidelity Bank, it would have been entitled to a lien upon it for a balance of account, no matter who was the real owner of the paper. *Bank* v. *Bank*, 1 How. 234. But the draft bore the indorsement of the plaintiff in a restricted form, signifying that the plaintiff had never parted with its title to the paper. The indorsement by the plaintiff, "For collection," was notice to all parties subsequently dealing with the draft that the plaintiff did not intend to transfer the title or the ownership of the proceeds to another. The defendant could not acquire any better title to the draft or to its proceeds than belonged to the Fidelity Bank, except by a purchase for value, and without notice of any infirmity in the title of the latter; and, as the indorsement upon the draft was notice of the qualified title of the Fidelity Bank, the defendant simply succeeded to the rights of that bank. These propositions were fully considered and decided by this court in *Bank* v. *Bank*, 22 Blatchf. 58, 19 Fed. Rep 301; and the authorities cited in the opinion in that case amply support the conclusions stated. In view of the restrictive indorsement of the plaintiff upon the draft, if the defendant had actually made an advance to the Fidelity Bank on the faith of the draft, it could not have retained the proceeds as against the true owner.

The real question in the case is whether the defendant can defeat the plaintiff's recovery, in whole or in part, upon the theory that the Fidelity Bank has acquired title to the proceeds of the draft. If the course of dealings between the plaintiff and the Fidelity Bank was such as to imply the understanding of both that the proceeds of all paper intrusted to the latter for collection should be retained and used as the money of the latter, the law must give effect to this intention and understanding; and it would follow that the proceeds would become the property of the Fidelity Bank the moment when, according to the contemplation of the parties, the relation of principal and agent was to be superseded by

that of debtor and creditor.    If the proceeds of the draft became at any time the property of the Fidelity Bank, the plaintiff cannot look to the defendant, but must assert its claim as a general creditor of the bank against the receiver.    The business relations between the plaintiff and the Fidelity Bank differed in no respect from the ordinary one of banker and customer, in which the account of the latter is made up of credit items of various kinds, including deposits, discounts, and collections. The custom of bankers to credit customers with the proceeds of paper left for collection when the paper has been collected, is universally recognized; and customers and bankers are presumed to contract and deal together in view of this usage.    The law therefore authorizes the banker to credit the customer with the proceeds in lieu of making a specific delivery; and the necessary effect of an authorized credit is to create the relation of debtor and creditor between them from the time when the credit is given. Where, as was done in the present case, the customer gives instructions for "collection and credit," he merely expresses in terms what the law would imply if no instructions had been given.    When paper is thus delivered to a banker for collection, the banker becomes the customer's agent to make collection, with authority to pass the proceeds to the customer's account by a credit after they are collected; and he undertakes the duty of an agent for all the purposes of making the collection. He cannot terminate his responsibility as an agent until he has fully discharged it, and has substituted in its place his unqualified obligation as a debtor.    Until the banker becomes a debtor, and his obligation as such is complete and irrevocable, he remains an agent merely; and until then he acquires no title to the proceeds of the paper beyond the banker's lien. It is not unusual for bankers to credit their customers with paper left with them for collection in advance of the actual receipt of the proceeds.    Ordinarily this is a provisional credit only, made in anticipation that the paper will be promptly paid, and with the right to cancel the credit if the paper is dishonored.    *Bank* v. *Bank,* 4 Dill. 290.    When the paper consists of sight drafts or checks, and the credit is given when the paper is delivered as upon a deposit of money, the transaction may be equivalent to the discount of the paper, or the delivery may be treated as a deposit of money, in which case, of course, the title to the paper passes to the banker.    *Railway Co.* v. *Johnston,* 27 Fed. Rep. 243.    These are exceptional transactions, however, in which the rights and obligations of the parties are to be ascertained from the special facts of each case; and they furnish no rule which can be applied to a case like the present, where the credit is not given by the banker until the collection of the paper.    If the Fidelity Bank had credited the plaintiff with the proceeds of the draft while it was a going concern, notwithstanding it had not actually received the proceeds, the question would arise whether the plaintiff would not be concluded and its position fixed as that of a creditor instead of a principal.    In a case like that it might be urged with much reason that when the banker has, through his subagent, collected the paper intrusted to him, and given credit for the amount to the customer, he has done just what both parties contemplated should be done, and

hence has properly substituted himself a debtor in place of an agent. The case of *Levi* v. *Bank*, 5 Dill. 104, decides, in effect, that the holder of paper who delivers it to a banker "for collection and credit" is at liberty to treat the banker as an agent until the proceeds are collected by the banker in money, and that the authority of the latter to credit the customer does not arise until he has actually received the money. If that adjudication should be followed in the present case it would be decisive against the contention of the defendant, inasmuch as the Fidelity Bank has never received the proceeds of the draft in money. But it is not necessary, for present purposes to adopt the views of the learned judge, expressed in the opinion in that case. Up to the time when the receiver took possession of its assets, the Fidelity Bank had neither credited the proceeds of the draft to the plaintiff nor notified the plaintiff that the draft had been collected. It had not elected to terminate its character as an agent and assume that of a debtor to the plaintiff when it suspended business. It could not do this when *in articulo mortis*, and thus divest the plaintiff of title to the proceeds of the draft, without disloyalty and injury to its principal. The ordinary relation of banker and customer was then at an end, and the implied contract founded on that relation did not extend to the new situation.

The defendant's position is no better than the position of the Fidelity Bank. It cannot withhold the proceeds of the draft from the plaintiff because it has any title of its own, or any right as against the plaintiff to apply them upon the indebtedness of the Fidelity Bank. Its defense rests solely on the right of the Fidelity Bank to retain the proceeds as the property of that bank. If it had remitted the proceeds to the Fidelity Bank, instead of crediting them to that bank, it would have fulfilled its whole duty towards the plaintiff as the owner of the draft.

Judgment is ordered for the plaintiff.