Continental National Bank *v.* First National Bank.

CONTINENTAL NATIONAL BANK *v.* FIRST NATIONAL BANK.

(*Nashville.*    March    8,    1902.)

1. SUPREME COURT.    *Disposition of chancery cause tried by jury.*

This Court will not hear a party who has submitted false or im-
material issues for jury trial of a chancery cause, complain
that his issues were submitted to the jury's determination, or
of any disposition the jury may have made of same, or of the
jury's failure to make any disposition of them.    The Court
will, in such case, pronounce decree in accordance with the
jury's findings upon the material and determinative issues,
disregarding others.    (*Post, pp. 375–378.*)

2. EVIDENCE.    *Opinion not admissible.*

It is not competent for a defendant's witness to express the opin-
ion that the case in which he is giving testimony is a black-
mailing scheme.    But where, after the defendant has with-
drawn such opinion of his witness, the same is reintroduced
by the complainant, the latter cannot complain, either of its
original introduction or that he is not permitted to contradict
it, the matter being immaterial and collateral.    (*Post, p. 378*).

3. SAME.    *General exceptions insufficient.*

General exceptions to the admission of evidence, stating no
grounds for its rejection, are insufficient, and should be disre-
garded.    (*Post, p. 379.*)

4. SAME.    *Of character.*

Where in a civil action the business honor and integrity of a
party is assailed or necessarily involved, it is competent to
prove good character and invoke presumption of innocence on
behalf of such person.    (*Post, p. 379.*)

Cases cited: Rogers *v.* Stokes, 87 Tenn., 298; McBee *v.* Bowman,
89 Tenn., 140; Spears *v.* Insurance Co., 1 Bax., 370; Henry *v.*
Brown, 2 Heis., 213; Scott *v.* Fletcher, 1 Tenn., 488.

Continental National Bank *v.* First National Bank.

5. SAME. *Further examination of witness whose deposition is read allowable.*

It is not error for the Court to permit a party who has read a deposition taken by his opponent to examine the witness orally as to matters not brought out in the deposition. This is matter that rests in the discretion of the trial judge. (*Post, pp. 379–383.*)

6. SAME. *Books of bank, how proved.*

For the purpose of showing that its opinion, expressed to a third party, as to the solvency of a customer was honestly given, a bank may introduce its books, showing its account with such customer, upon proof of their identity by the cashier, without other proof as to their correctness. (*Post, pp. 380, 381.*)

## FROM   DAVIDSON.

Appeal from the Chancery Court of Davidson County. H. H. COOK, Ch.

PIERSON & EWING and JAMES A. HARRIS for Continental Bank.

STOKES & STOKES for First National Bank.

WILKES, J. The bill in this case seeks to hold the First National Bank of Nashville liable to the Continental National Bank of Memphis for about $30,000.

The ground of liability as claimed is, that the Nashville Bank in its own interest, and for its own benefit, falsely and fraudulently represented to

the Memphis Bank that certain parties on paper presented to it for discount were good and solvent, when, as a matter of fact, they were insolvent, and the Memphis Bank, in consequence, lost the greater part of the money loaned.

The Nashville Bank denied all allegations that tended to show liability on its part. A jury was demanded for the trial of issues of fact by the complainant, Memphis Bank, and a large number were presented. They were finally narrowed down to six on the part of the complainant, and two on the part of defendant.

The jury returned a finding upon most of the issues, but reported that as to the first issue, upon which the other four submitted by complainant were based, they could not agree.

The six issues presented by complainant were interdependent—that is, all of them were dependent upon the first, and to some extent on each other.

The first issue was, in substance, did the Nashville Bank represent that the parties inquired about, Duncan, Gaines & Morrow, were solvent, and that a loan to them was desirable.

. The second was, did the Memphis Bank make the loan upon the faith of these representations; the third, were they false; the fourth, did the Nashville Bank know they were false when made; fifth, was the Nashville Bank interested in the loan procured; and sixth, did it receive the pro-

ceeds or any part of the loan for its own benefit?

The jury having been unable to find that the Nashville Bank ever represented the solvency of the parties, the other issues dependent on it failed with it.

Taken together, these issues did not present the case made out by the bill of fraudulent concealment and procurement of the loan, and the Judge so stated, and added that if they were all found for complainant, he would not give a decree upon them in complainant's favor; but he said that the two issues submitted by the defendant were decisive of the case. He, however, permitted all of the issues to go to the jury. The trial Judge ought to have excluded such as he deemed immaterial, but this is not an error of which complainant can complain.

The first issue submitted by the defendant was, whether the Nashville Bank procured a broker in Nashville to negotiate the loan for its benefit; and the second was, did the Nashville bank make false and fraudulent representations to the Memphis Bank in order to effect this loan for its own benefit.

These two issues presented all the features necessary for a decision of the case upon its merits and covered the charges in the bill, and were determinative of the questions involved. The jury answered both in the negative, and under the

facts thus developed there could not be liability on the part of the Nashville Bank.

We need not go into the details of the exceptions made as to the findings of the jury on complainant's issues, as all of them might have been disregarded by the Court below, and judgment rendered alone upon the issues as presented by defendant, and the Court no doubt did base its judgment upon the latter, disregarding complainant's issues.

It is said that the Court below erred in excluding an opinion claimed to have been expressed by Dr. Morrow, and his apparent contradiction by Mr. Watts. The statement of Dr. Morrow was first called for by defendant's counsel. He, however, abandoned and withdrew it, and it was then reintroduced by the complainant's counsel. We need not go into the details of this matter. The opinion and statement of Dr. Morrow was, in the first instance, incompetent, and should not have been introduced. It was merely his opinion that the present suit was a blackmailing scheme. It was properly withdrawn by defendant's counsel. It was improperly reintroduced by complainant's counsel. Its contradiction by Mr. Watts, if it is a contradiction, was unimportant, and as to a collateral and immaterial matter, which complainant's counsel had himself improperly placed in the record.

It is said the Court below erred in allowing

evidence of the good character of W. M. Duncan, as to his business character and standing for honor and integrity. The Court of Chancery Appeals finds there was no error in this, since the business honor and integrity of Mr. Duncan was involved and assaulted in the bill.

The objection was a general one, without specifying specific grounds, and for this reason should not have been sustained.

But we think the rule in Tennessee is that in cases where a party is charged with a great moral wrong, he may introduce evidence of good character and invoke the presumption of innocence. *Rogers* v. *Stokes,* 3 Pickle, 298; *McBee* v. *Bowman,* 5 Pickle, 140; *Spears* v. *Ins. Co.,* 1 Bax., 370; *Henry* v. *Brown,* 2 Heis., 213; *Scott* v. *Fletcher,* 1 Tenn., 488.

It is true Duncan, having died, was not a party, but he was charged along with the other parties as a co-conspirator to obtain the loan. We see no reversible error in this.

Complainant took the deposition of John P. Williams, but declined to read it.

The defendant thereupon read it, and was then permitted, over complainant's objection, to orally examine Mr. Williams as to matters not brought out in the deposition.

We think this was a matter to a large extent in the discretion of the trial Judge, and the oral examination of the witness could be allowed

in order to arrive at the true facts in the case.

It is said it was error to introduce the books of the bank in evidence. They were produced and identified by the Cashier. It is said the defendants should have gone further and shown by the party who made the entries that they were correct.

The books were introduced to show the state of accounts between the Nashville Bank and Duncan, Gaines & Morrow, the object being to show by the course of dealing between the bank and these parties that the bank was treating and dealing with them as solvent, reliable customers.

It has been held that where it becomes material, either for or against a corporation, and as against a stranger, or as between two strangers, to prove what was done by the corporation; its books and records are admissible in evidence, and they are the best evidence. 6 Thomp. Corporations, Sec. 7734.

We think it not necessary that the book-keeper who made the entries should be examined as to their correctness.

At most, he could only testify that the entries made by him are true entries of transactions reported to him by others. In other words, he could only testify that he wrote down what others told him. The Court knows, as a matter of common information, that there are many persons in the employ of banks, and each has his dif-

Continental National Bank *v.* First National Bank.

ferent department, and each transaction passes through the hands of several—it may be of many persons. We take a deposit, for instance. It goes into the hands of the receiving teller, thence into the hands of a journal clerk, thence to the individual book-keeper, or such other officials as perform the functions of these officers. When it reaches the hands of the book-keeper, who makes the final entry, which stands as the true statement between the bank and depositor, it has gone through the · hands of a dozen parties, perhaps, and the last party only records what comes to him through so many hands, and knows nothing, it may be, of the actual transaction. It would seem that the Cashier, whose function it is to overlook all transactions at the counter, and over the books, and test each transaction through all its stages, should be the person most competent to produce the books and vouch for their accuracy.

We do not think there is any reversible error in this assignment. But, however this may be, we do not consider the matter as reversible, if it is error. The books were only introduced to show the state of accounts between the bank and Duncan, Morrow & Gaines, and this was only material on the question of their standing with the bank, and was collateral to the real issue, which was whether the bank made false and fraudulent representations of the condition of the parties.

Their account with the bank was only a circum-
stance · bearing on their standing with it, and
the · confidence of the bank in them was shown
by other proof.

Looking at the case as a whole, it is evident
that before complainant can recover, it must show
that it was fraudulently misled by the defendant
to make the loan it did.

Not only did the jury find that this main con-
tention was not sustained by the evidence, but· it
found to the contrary, and the Court of Chan-
cery Appeals reports that such finding is abun-
dantly sustained by the record. That Court re-
ports that the record wholly fails to show that
the Nashville Bank had anything to do with the
broker who was shown to have procured the loan.
The testimony of Mr. Moore, the broker, is taken,
and he is not attacked or contradicted.· He states
that he negotiated the loan and that the bank
had nothing whatever to do with it, and that
he did not know that the bank was interested
in any way in the loan. On the contrary, he
states that he procured the parties to borrow the
money on the solicitation of Mr. Neely, the Pres-
ident of the complainant bank, and that Mr.
Neely was not only very anxious to get the paper,
but that he made no inquiry whatever as to the
standing of the parties, but assumed to be entire-
ly familiar with all of them.

Moore was the broker of Mr. Neely in Nash-

ville, and his warm, personal friend of forty years standing. He had made various loans of large sums for Mr. Neely, and Neely inquired specially of Moore whether he could not obtain some of Dr. Morrow's paper, and, after inquiry, found that he could with Duncan & Gaines, indorsers, and he thereupon authorized the loan. .

Upon the whole case we think the complainants have wholly failed to make out a case of fraud upon the part of the Nashville Bank, and to establish any ground of liability against it, and the decree of the Court of Chancery Appeals is affirmed.