**COMMERCIAL NAT. BANK OF HUTCHINSON, KAN., v. HEID BROS., Inc.**
(No. 1142.)

(Court of Civil Appeals of Texas. El Paso. Dec. 16, 1920. Rehearing Denied Jan. 13, 1921.)

1. **Appeal and error ⚮1010(1)—Finding supported by evidence not disturbed.**

A finding of fact will not be disturbed by the Court of Civil Appeals if there is some evidence to support it.

2. **Banks and banking ⚮159—Bank acquires no title to paper accepted for collection.**

A bank which accepts paper for collection acquires no title to the paper, but in such case

acts as a collecting agent for the depositor, who retains title.

3. **Banks and banking ⚮165—Bank takes title to proceeds collected on crediting depositor therewith.**

Whether title to proceeds of draft collected by bank for depositor is in the bank or the depositor depends on the intention of the parties, but, in the absence of any evidence of intention, the bank takes title immediately upon crediting the depositor with the amount of the proceeds; the bank being authorized by custom to credit depositor therewith.

4. **Banks and banking ⚮165 — Proceeds of drafts deposited with bank for collection held property of bank.**

Where a bank credited a depositor of drafts for collection with the amount of the drafts subject to collection, the proceeds thereof, after collection by a correspondent bank while in the hands of another correspondent bank in the process of transmission to the bank with which the drafts had been deposited, belonged to such bank, and not to the depositor; the collection having discharged the condition upon which the credit had been given.

5. **Removal of causes ⚮5—Refusal to remove garnishment proceeding to federal court held proper.**

Refusal to remove the case to the federal court on petition of a party to the garnishment proceeding, joined on application of the garnishee, held proper; the proceeding being merely ancillary to the original suit.

6. **Garnishment ⚮206—Adverse claimants to garnished fund properly joined on application of garnishee.**

In a garnishment proceeding, it was proper for the court, on application of the garnishee, to bring in adverse claimants to the fund.

7. **Evidence ⚮376(9), 377 — Foundation for admission of bank deposit slips and bank ledger held sufficient.**

Testimony of bank president that the books and records of the bank were kept under his supervision and were correctly kept held sufficient foundation for admission in evidence of deposit slips and bank ledger.

8. **Bills and notes ⚮509 — Deposit slips and bank ledger held admissible to show bona fide purchase.**

In garnishment proceeding involving question of ownership of proceeds of drafts as between defendant and bank with which defendant had deposited drafts for collection, deposit slips showing the credit extended by the bank to defendant for the amount of the drafts and the ledger of the bank showing the condition of the defendant's account held admissible on issue of whether the bank became a purchaser for value of the drafts.

9. **Garnishment ⚮12½, New, vol. 11A Key-No. Series—Buyers suing to rescind not estopped from garnishing proceeds of drafts after payment thereof.**

Buyers, after having paid drafts, were not estopped in their action for rescission from garnishing proceeds in hands of a bank in pro-

---

⚮For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

(226 S.W.)

cess of transmission to other bank with which drafts had been deposited for collection.

Appeal from District Court, El Paso County; Ballard Coldwell, Judge.

Suit by Heid Bros., Incorporated, against the Pierson-Lathrop Grain Company of Hutchinson, Kan., in which the Security National Bank of Dallas, Tex., was garnished, and in which the Commercial National Bank of Hutchinson, Kan., was made a party on application of the garnishee. From judgment rendered for plaintiff adjudging funds in the hands of the garnishee subject to garnishment, the Commercial National Bank of Hutchinson, Kan., appeals. Reversed, and judgment rendered for the Commercial National Bank of Hutchinson, Kan., for the garnished fund.

Loomis & Kirkland, of El Paso, I. N. Watson, of Kansas City, Mo., and C. M. Williams, of Hutchinson, Kan., for appellant.

W. M. Coldwell, J. U. Sweeney, and R. B. Rawlins, all of El Paso, for appellee.

Turney, Burges, Culwell, Holliday & Pollard, of El Paso, for garnishee.

HIGGINS, J. This suit involves a fund in the possession of the Security National Bank of Dallas, Tex., garnishee, in a suit brought by the appellee, Heid Bros., Incorporated, of El Paso, Tex., against the Pierson-Lathrop Grain Company of Hutchinson, Kan.

The litigation arose out of the following facts:

In August, 1918, Heid Bros. contracted to purchase three carloads of corn from Pierson-Lathrop Grain Company. The corn was shipped from Hutchinson, Kan. The initial carrier issued an order bill of lading covering each of the three cars. Each bill recites that it was issued for shipment of 60,000 pounds of corn received at Hutchinson, Kan., from the Kansas Grain Company, consigned to order of the Kansas Grain Company, destination El Paso, Tex., notify Pierson-Lathrop Grain Company at El Paso, Tex. The bills were indorsed in blank by the Kansas Grain Company and Pierson-Lathrop Grain Company.

To cover the purchase price of the corn the Pierson-Lathrop Grain Company drew three demand drafts on Heid Bros. in favor of the Commercial National Bank, or order, amounting in the aggregate to $5,806.38. These drafts were attached to the bills of lading and delivered by the grain company to the Commercial National Bank of Hutchinson, Kan. The bank received same on August 27, 28, and 29, 1918. Upon their receipt the bank gave Pierson-Lathrop Grain Company credit for the amount of the drafts and entered such credits in the passbook issued to that company by the bank. The Commercial National Bank transmitted the drafts with the attached bills to its correspondent, the Fourth National Bank of Wichita, Kan. The latter bank transmitted the same to its correspondent, the Security National Bank of Dallas, Tex., which in turn transmitted the same to its correspondent, the Union Bank & Trust Company of El Paso, Tex. On September 3, 1918, Heid Bros. paid and took up the drafts and attached bills of lading from the latter bank, and received the corn from the terminal carrier. Prior to September 6, 1918, the El Paso bank remitted the proceeds to the Dallas bank. On the latter date the El Paso bank wired the Dallas bank to withhold payment, and in response to this wire the fund was held up by the Dallas bank. Mr. Moye, the vice president of the El Paso bank, testified that the wire was sent at the instance of Heid Bros., who stated the corn was in bad condition and they wanted to get a settlement with Pierson-Lathrop Grain Company before they received their money.

On November 7, 1918, Heid Bros. filed suit in the district court of El Paso county, Tex., against Pierson-Lathrop Grain Company to recover the amount of the drafts so paid by them and an additional sum paid for freight and demurrage charges. It was alleged that the corn was inferior in quality to that purchased, and that the corn was held by plaintiffs subject to defendant's order. In effect, it was a suit for rescission. At the instance of Heid Bros., a writ of attachment was issued in that suit on November 7, 1918, and levied upon the corn. On the same date Heid Bros. sued out a writ of garnishment against the Security National Bank of Dallas, Tex., which was served.

The garnishee answered, setting up that it had in its possession $5,806.38, being the proceeds received by it from the collection of three drafts drawn by the Pierson-Lathrop Grain Company on Heid Bros.; that said drafts, prior to their payment, had been received by the garnishee from its correspondent, the Fourth National Bank of Wichita, Kan., and by garnishee transmitted for collection to its correspondent, Union Bank & Trust Company, at El Paso, and, the said drafts having been collected by the El Paso Bank, the fund was transmitted to the garnishee; that the fund was claimed by the Pierson-Lathrop Grain Company, the Fourth National Bank of Wichita, Kan., the Commercial National Bank of Hutchinson, Kan., and the Union Bank & Trust Company of El Paso, Tex., and the garnishee was unable to determine to whom said fund belonged and to whom it was indebted on account thereof, and asked that the claimants of the fund be brought into court and their rights determined and the garnishee protected.

Service was obtained upon the various parties vouched in by the garnishee. Pierson-Lathrop Grain Company made no answer. The Fourth National Bank of Wichita and

the Union Bank & Trust Company of El Paso filed disclaimers. The Commercial National Bank of Hutchinson, Kan., filed a lengthy answer claiming the funds.

On March 5, 1919, in the suit of Heid Bros. against Pierson-Lathrop Grain Company judgment by default was rendered in favor of Heid Bros. for the amount sued for with foreclosure of attachment lien upon the corn seized under the writ of attachment and without prejudice to the right of plaintiff to proceed with its garnishment. The judgment recites that it was rendered upon notice to the defendants served out of the state and ordered that no execution issue except as provided by law. In the garnishment proceeding Heid Bros. set up that the funds held by the Dallas bank was the property of the original defendant in the suit and denied all of the allegations of the Commercial National Bank. On January 26, 1920, judgment was rendered in the garnishment proceeding in favor of Heid Bros. for the funds in controversy and against the claim of the Commercial National Bank.

The case was tried before the court, which made findings of fact substantially as follows:

First. That the three drafts were deposited by the Pierson-Lathrop Grain Company and credited to its account.

Second. That the drafts were accepted for deposit by the Commercial National Bank subject to collection.

Third. That said bank acted as agent for collection of the drafts.

Fourth. That the proceeds of the drafts was the money of the Pierson-Lathrop Grain Company.

Fifth. That after notice of the claim of Heid Bros. the Commercial National Bank had on deposit, arising from other sources than said drafts, funds equal to the amount of the drafts.

Sixth. That no evidence of any fraud on the part of Pierson-Lathrop Grain Company was offered in evidence other than the proceedings in the suit of Heid Bros. against the Pierson-Lathrop Grain Company.

The court's conclusion of law was that the money in the hands of the Dallas bank was subject to the garnishment of Heid Bros., and that Heid Bros. were entitled to recover the same of the Dallas bank.

The passbook of the grain company in which the credits were entered contains the following:

"Notice

"All items received by this bank for deposit are credited subject to payment, reserving the right to charge back any item not paid."

The exact nature of the indorsements upon the drafts are not clearly shown. In the statement of facts the drafts are referred to as Exhibits H, I, and J. It is said of Exhibit H:

"The indorsement stamp of the Commercial National Bank of Hutchinson, Kan., dated August 27, 1918, of the Fourth National Bank of Wichita, Kan., dated August 28, 1918, and of the Security National Bank of Dallas, Tex., dated August 29, 1918, appear on the back of said draft; also the figure '2' with a circle around it."

As to Exhibit I it is said:

"This draft is similar in all respects to Exhibit H, except the following: The date of the draft is August 28, 1918. The indorsement stamp of the Commercial National Bank of Hutchinson, Kan., is August 28, 1918, of the Fourth National Bank of Wichita, Kan., is August 29, 1918, and of the Security National Bank of Dallas, Tex., is August 30, 1918. The figure '2' with circle around it does not appear."

As to Exhibit J it is said:

"This draft is similar in all respects to Exhibit H, except the following: The date of the draft is August 29, 1918, and the amount $1,943.70. The date of the indorsement stamp of the Fourth National Bank of Wichita, Kan., is August 30, 1918, and of the Security National Bank of Dallas, Tex., is August 31, 1918. The indorsement stamp of the Commercial National Bank of Hutchinson, Kan., does not appear on the back, and the figure '1' instead of '2' appears, with a circle around it."

The Commercial National Bank prosecutes this appeal.

## Opinion.

Under the seventh assignment appellant complains of the third finding of fact by the trial court to the effect that it acted as agent for collection of the drafts upon the ground that such finding is contrary to the evidence.

[1] There is doubt in the minds of some of the members of this court as to the correctness of this finding, but this court is not authorized to set aside a finding of the lower court upon an issue of fact if there be any evidence to support the same. We are of the opinion that there is some evidence to support this finding, for which reason the assignment is overruled, and the case will be disposed of upon the assumption that appellant acted as agent for the Pierson-Lathrop Grain Company in the collection of the drafts.

Under the eighth assignment appellant complains of the fourth finding to the effect that the proceeds of the drafts was the money of the grain company. This finding purports to be a finding of fact, but it relates to the vital and controlling question of law in the case, and it cannot be sustained unless it is warranted by the other findings of fact by the trial court and the evidence.

[2, 3] A bank which accepts paper for collection acquires no title to the paper. In such a case the bank acts as a collecting agent and title remains in the depositor. But

when it has been determined that a draft was deposited for collection only, and that title thereto did not vest in the bank, the question still remains as to the title to the proceeds of the draft after it has been collected. This question is simply one of the intention of the parties. If it was agreed or understood that the proceeds should be remitted to the depositor immediately upon collection, or if it can be shown in any other way that the parties intended that the proceeds of the draft, as well as the draft itself, should remain the property of the depositor, such intention will control, and the banker will not take title to the proceeds. In the absence of any evidence of such an agreement or intention:

"The custom of bankers to credit customers with the proceeds of paper left for collection when the paper has been collected is universally recognized; and customers and bankers are presumed to contract and deal together in view of this usage. The law therefore authorizes the banker to credit the customer with the proceeds in lieu of making a specific delivery; and the necessary effect of an authorized credit is to create the relation of debtor and creditor between them from the time when the credit is given." First Nat. Bank v. Bank of Monroe (C. C.) 33 Fed. 408.

From this it follows that the bank takes title to the proceeds of a check or draft deposited with it for collection immediately upon crediting the depositor with the amount of such proceeds. In this connection the rights of a bank are different from and greater than those of other attorneys or agents, as is pointed out in Tinkham v. Heyworth, 31 Ill. 519. The bank occupies the position of an agent for collection until the proceeds are actually received and credited, whereupon it takes title thereto, and the relation of debtor and creditor takes the place of that of principal and agent.

This statement of the rule as to the title to the proceeds of paper deposited for collection has been declared by the courts of other states in many cases, and has been recognized by the Supreme Court of Texas in Continental Bank of New York v. Weems, Receiver, 69 Tex. 489, 6 S. W. 802, 5 Am. St. Rep. 85. In that case Weems was the receiver of the City Bank of Houston, Tex., an insolvent corporation. By a course of dealing kept up during a series of years the New York bank was in the habit of discounting notes for the Houston bank and forwarding the same, on maturity, to the Houston bank for "collection and return, with an understanding that the proceeds of such discount notes should be preserved by said City Bank as the property of the" New York bank "and return it as such." Immediately before its failure the Houston bank had received a large amount of paper so discounted for it by the New York bank, and had collected it in part and placed the proceeds to the credit of the latter. The New York bank claimed a right of priority of payment out of the assets of the Houston bank in the hands of the receiver of the amount due it by reason of the collection and appropriation of the proceeds of the notes sent by it to the Houston bank. The question to be determined was whether the collecting bank was to be decreed the trustee of the funds received by it upon the collected notes; it being contended by the receiver that the New York bank was an ordinary creditor and entitled to no priority. Justice Gaines, in disposing of that question, said:

"We think these facts settle the question of trust in the affirmative. If the securities had been sent for collection merely, the proceeds to be credited to the New York bank, it is clear *that after their collection the relation of debtor and creditor would have subsisted, and the latter would have no claim upon the funds.* But by the understanding between the banks and the actual transaction between the parties as shown by the agreed evidence, a special agency was created, and the city bank had no authority to hold and credit the proceeds of the notes, but was bound to remit them immediately to its correspondent." (Italics ours.)

The ruling in this case clearly supports the view that in the case of paper deposited for collection, with authority in the bank to credit the depositor with the proceeds of the paper when collected, the bank becomes the owner of the proceeds when collected and so credited, and that the relation of creditor and debtor then takes the place of the relation of principal and agent theretofore existing. See, also, upon the subject, 3 R. C. L. title "Banks," §§ 152 and 261.

In the case at bar there is no evidence whatever of any intention or agreement that the title to the proceeds of the drafts after collection should remain in the grain company, and the trial court made no such finding. All of the evidence is to the contrary. The appellee was the payee of the drafts. When deposited the amounts for which they were drawn was credited in the passbook of the grain company, and was subject to be checked against, and, according to the testimony of the appellant's president, was checked against. He testified that the first information appellant had of any trouble over the drafts came on September 7th, in a telegram from the Dallas bank, and on that date the balance of the grain company was $4,522.69. This was about $1,800 less than the face of the drafts which had been previously credited to the grain company. He also testified that some time during the day of September 6th the account of the grain company was overdrawn, though it had a balance in its favor at the close of business on that day.

[4] But, discarding entirely the testimony

of appellant's president, we have the trial court's finding that the drafts had been deposited and credited subject only to collection and the admitted fact that they had been collected by the El Paso Bank on September 3d. The collection discharged the condition upon which the credit had been given, and the relation between the grain company and appellant then became simply that of creditor and debtor. It is true the proceeds of the collection had not reached appellant when garnished, but they were in process of transmission to it in the accustomed manner of banks. All of the correspondent banks were solvent and had been guilty of no default or negligence with respect to the collection. We are of the opinion that upon the trial court's first and second findings and the admitted facts the grain company, as against the appellant bank, could not have asserted successfully a superior title to the fund at the time it was garnished in the hands of the Dallas bank. As between those parties the superior title was in appellant, and it then was simply the debtor of the grain company. If this view be correct, the fund in the hands of the Dallas bank was not subject to the garnishment herein.

Appellee has invoked the decision of our Supreme Court in Van Winkle Gin & Machinery Co. v. Citizens' Bank, 89 Tex. 147, 33 S. W. 862. That was a suit against the gin company, resident in Texas, upon its acceptance of a draft, the suit being brought by the Citizens' Bank, a resident of New York, and indorsee of the draft. It is unnecessary to review that case at length further than to say that it was a suit to enforce a contractual obligation against the acceptor, and the court, for reasons shown in the opinion, held that the holder of the acceptance could not enforce the same, but must look to the drawer. The distinguishing features of that case are pointed out in an opinion by Justice Hodges of the Texarkana court in First National Bank of Chicago v. Mineral Wells & Lakewood Street Railway Co., 133 S. W. 1099, in which writ of error was refused. The case by the Texarkana court was upon a state of facts very similar to the one here presented, but was decided upon the theory that the First National Bank of Chicago became the owner of the draft the proceeds of which were in controversy. The case before this court, however, cannot be disposed of upon that theory, because the trial court found that the appellant bank accepted the drafts for collection and acted as an agent for collection.

For the reasons indicated, the eighth assignment is sustained.

The views expressed necessitate a reversal and rendition of the judgment in this case. Recognizing, however, that a writ of error may be granted and our ruling disapproved by the Supreme Court, our views upon other assignments in the record will be briefly indicated so as to avoid the necessity of the Supreme Court returning the case to us for further consideration.

[5] Certain assignments complain of the refusal of the trial court to remove the case to the federal court upon petition and bond, therefor filed by the Commercial National Bank. In this there was no error, for the reason that this was merely an ancillary proceeding to the original suit of Heid Bros. against the Pierson-Lathrop Grain Company. Black's Dillon on Removal of Causes, § 32. Furthermore, it is shown by a supplemental transcript that the federal court refused to assume jurisdiction and remanded the case to the state court.

[6] As to those assignments assailing the authority of the court to bring in the adverse claimants to the fund, they are without merit. This procedure is in accord with our practice. Iglehart v. Moore, 21 Tex. 501.

[7] Various assignments complain of rulings upon evidence none of which present any error, except those which complain of the exclusion of the deposit slips of the bank showing the credit extended the grain company for the amount of the drafts and the ledger sheet showing the condition of the Pierson-Lathrop account. The bank president testified that the books and records were kept under his supervision and were correctly kept, and this was sufficient to admit them in evidence. Tel. Co. v. Pearson, 137 S. W. 733; Bank v. Bank, 108 Tenn. 374, 68 S. W. 497; Wigmore on Evidence, § 1530.

[8] The error in the exclusion of this evidence would necessitate the remanding of the case, if we are in error in rendering. This evidence was material upon the question of whether the appellant became a purchaser for value of the drafts and bills of lading.

All of those assignments which are predicated upon the theory that appellant became the owner of the drafts and the attached bills of lading are overruled because the trial court found that the drafts were accepted merely for collection, and that appellant acted as agent in collecting the same.

[9] The question of estoppel presented under the thirteenth assignment is not well taken. Heid Bros. were not estopped to pursue the fund in controversy, but their inability to recover it rests upon the view heretofore expressed.

Those assignments which complain of the allowance and taxing as costs of an attorney's fee in favor of the garnishee become immaterial in view of the disposition made of the case. Other assignments not specifically mentioned have been considered and are regarded without merit.

The judgment of the lower court is reversed, and here rendered in favor of the

appellant for the garnished fund. All costs here and in the court below are taxed against Heid Bros., Incorporated.