## A. J. COOK & COMPANY v. J. P. SEATON, et al.

Western Section. February 25, 1927.

Petition for Certiorari denied by Supreme Court, January 21, 1928.

1. **Mechanics' liens. Plaintiff is entitled to a personal judgment against purchaser regardless of whether material is used on the property or not.**
   In an action to establish a mechanic's lien where the evidence showed that the material was bought by the contractor held the plaintiff was then entitled to a personal judgment against the purchaser regardless of whether the material was delivered to or used on the property on which it is sought to fix a lien.

2. **Evidence. Books of a corporation may be introduced in evidence without employees who kept the books being produced as witnesses.**
   In an action to establish a mechanic's lien where an officer of the corporation testified in regard to certain dray tickets and offered them in evidence, but the parties who actually made the tickets were not offered as witnesses, held that the dray tickets were original records of the corporation and were admissible as evidence without being identified by the various employees who actually made them up.

3. **Mechanics' liens. Evidence held sufficient to show order and delivery of materials to the building.**
   Where plaintiff offered in evidence dray tickets which showed the delivery of the materials to the place where the house was being erected, held that this was sufficient evidence of the order and that the material was actually delivered to the lot where the building was being erected.

4. **Pleading. A defense cannot be proved which is not set up in the answer.**
   A defendant can prove only special defense which he has properly pleaded in his answer.

5. **Appeal and error. Chancellor must make a finding or be requested to find on facts before that error can be complained of in the appellate court.**
   Before a party can complain of error on the part of the Chancellor in regard to facts there must be a finding of facts by the Chancellor or request for a finding by the party.

Appeal from Chancery Court, Shelby County; Hon. Wightman Huges, Chancellor.

Reversed.

G. P. Douglass, of Memphis, for appellant.
Byars & Swift, of Memphis, for appellee.

HEISKELL, J.    This is a suit brought by A. J. Cook & Company, Inc., appellant herein, against the defendants, J. P. Seaton, J. P. Seaton & Company, Clara Mae Wilcoxon, Edmund M. Lingenfelder and wife, Lilly K. Lingenfelder, State Investment Company, trustee, and Bank of Commerce & Trust Company, trustee, for the purpose of enforcing a Mechanic's & Furnisher's Lien against a certain lot of real property known and referred to as "No. 1707 York avenue," in Memphis, Shelby county, Tennessee (more fully described in the pleadings) to secure payment of an indebtedness in the principal sum of $655.05, for certain building material furnished by appellant to J. P. Seaton and Clara Mae Wilcoxon, for use in the construction of a dwelling house thereon;

The lot of real property upon which the house and improvements were constructed was owned by the defendant Clara Mae Wilcoxon, she having acquired title thereto by Warranty Deed, dated May 8, 1923, delivered between May 17 and 19, 1923, and of record in the Register's office in Book 888, page 379; and she was the owner of same at the time most of the building material was furnished by appellant for use in the construction of the house and improvements thereon.

Prior to the purchase of said material from appellant the defendants, J. P. Seaton, a building contractor, and Mrs. Clara Mae Wilcoxon entered into a written contract whereby they agreed to construct a dwelling house upon the lot of real property in question, the defendant J. P. Seaton to have charge of the construction of said dwelling house, and after the same was completed, they proposed to sell it and divide the profits expected to be realized from the sale of said property;

After entering into this contract J. P. Seaton proceeded to purchase building material and construct the house upon said lot of real property;

Thereafter, by a Warranty Deed dated July 23, 1923, and filed for registration August 6, 1923, the said house and lot was sold and conveyed by Clara Mae Wilcoxon and husband, W. L. Wilcoxon, by Warranty Deed, to the defendants, Edmund M. Lingenfelder and wife, Lilly K. Lingenfelder;

Part of the building material in the way of brick, lime, cement, gravel, etc., used in the construction of said house, the defendant J. P. Seaton purchased from appellant herein.

All of the defendants answered except J. P. Seaton and Clara Mae Wilcoxon.  As to these a pro confesso was taken.

The Chancellor held that complainant had failed to establish by competent proof that the defendants, J. P. Seaton and Clara Mae Wilcoxon, are indebted to it; that complainant has further failed to establish by competent proof when and what deliveries of building material were made upon the real estate involved in the cause. Therefore the complainant was denied any relief and its bill was dismissed.

Complainant's assignments of error raise the question that the Chancellor erred in sustaining certain exceptions to the testimony of A. J. Cook and excluding said testimony and also in sustaining exceptions to certain dray tickets made exhibits to the deposition of A. J. Cook. The portion of the decree setting out the Chancellor's rulings in this regard is as follows;

"It is, therefore, ordered adjudged and decreed by the court:

"1. That the exceptions taken and made by defendants, Edmund M. and Lillie K. Lingenfelder, State Investment Company, trustee, and Bank of Commerce and Trust Company, trustee, before the final hearing, to the following question and answers of the witness, A. J. Cook, be and the same are hereby sustained, and the said testimony is hereby excluded from the proof, said questions and answers appearing in the deposition of A. J. Cook, at the bottom of page 3 and top of page 4, and reading as follows: to-wit:

"Q. Now, Mr. Cook, state whether or not, pursuant to this order given you by Mr. Seaton, at this time, if you furnished any building material to him for use in the erection of a house, and improvements on the lot of real property mentioned and described in paragraph 2 of the original bill filed in this cause, which is known as No. 1707 York avenue? A. Yes, sir, we furnished the materials as set out in the itemized statement which was delivered at the job, as stated—1707 York avenue.

"Q. I hand you herewith an itemized statement attached to the original bill filed in this cause, and made exhibit A thereto, and I will ask you to examine it and state whether or not that itemized statement contains a just, true and correct account of the material furnished by A. J. Cook & Company, to the defendant, J. P. Seaton, for use in the construction of improvements on this job? A. It does.

"2. That the exceptions taken and made by said defendants before the final hearing, to the hereinafter quoted testimony of A. J. Cook, appearing on pages 4 and 5 of his deposition, be and the same are hereby sustained and the said testimony excluded from the proof, said questions and answers, being as follows, to-wit:

"Q. Mr. Cook, please state what the total amount of such material so furnished to Mr. Seaton, is, Mr. Cook? A. $1257.86.

"Q. Now please state the total amount of credits on this job? A. $602.81.

"Q. And the balance due? A. $655.05.

"Q. Please state whether or not you know of your own knowledge, this is a correct balance due by J. P. Seaton, as shown by the records of A. J. Cook & Company. A. As shown by the records of our books, yes sir.

"Q. Now, Mr. Cook, this balance, $655.05 remains, just, due and unpaid? A. Yes sir.

"Q. Mr. Cook, I will ask you to state when the records of A. J. Cook & Company, show the first material to have been furnished to Mr. Seaton, on this job? A. May 5, 1923.

"3. That the exceptions taken and made by said defendants, before the final hearing, to the following questions and answers of the witness A. J. Cook, appearing on page 5, of his deposition, are hereby overruled; said questions and answers being ruled as competent, and being as follows, to-wit:

"Q. Mr. Cook, I believe you stated you were president of A. J. Cook & Company? A. Yes sir.

"Q. You have charge and control over the records of A. J. Cook & Company? A. Yes sir.

"4. That the exceptions taken and made by said defendants, before the final hearing, to the introduction of certain dray tickets as exhibits to the deposition of A. J. Cook (See page 6, Cook's deposition) be, and the same are hereby sustained, and the said dray tickets are hereby excluded from the proof, because introduced in an improper and incompetent manner, the court finding that the witness had no part in the preparation of said dray tickets, never handled same, and had, according to his testimony, nothing to do with the alleged deliveries thereunder:

"5. That the exceptions taken and made by said defendants, before the final hearing, to the following question and answer, at the bottom of page 6, of the witness, A. J. Cook's testimony is hereby excluded from the proof, said question and answer being as follows, to-wit:

"Q. Mr. Cook, please state when your records show the last of this material was delivered—last delivery of this material was made to Mr. Seaton, on this job? A. October 11, 1923.

"6. That the exceptions taken and made by said defendants before the final hearing to the following questions and answers of the witness, A. J. Cook, in his second deposition, taken on June 21, 1926, be, and the same are hereby sustained and the

said testimony excluded from the proof, and said questions and answers reading as follows, to-wit:

"Q. 3. Mr. Cook, I will ask you again to examine the itemized statement of account attached to the original bill in this cause and state whether or not all just and proper credits have been made on this account? A. They have.

"Q. 4. Mr. Cook, does the balance shown by that statement of account for material furnished to 1707 York avenue—what is the amount? A. $655.05.

"Q. $655.05 remain justly due and owing to A. J. Cook & Company, after allowing all proper credits? A. Yes sir.

"Finally, in view of the exceptions to the above quoted questions and answers having been sustained, and in view of the above specified findings of fact, it is further ordered, adjudged and decreed by the court that the original bill and the second-amended bill filed in this cause on April 6, 1925, be and the same are hereby dismissed, and that the complainant and G. P. Douglass, its surety, pay all the costs of this cause, for which execution may be issued as at law."

In so far as the complainant sought a personal decree against J. P. Seaton and Clara Mae Wilcoxon, we think the Chancellor erred in dismissing the bill, whether this testimony of Cook be excluded or not. There was a pro confesso as to these defendants and complainant was entitled to a personal judgment. Besides complainant's right to a personal judgment against these defendants is made out by other testimony than that of Cook. J. P. Seaton and W. L. Wilcoxon, the husband of Clara Mae, and who evidently acted for her, both testify to the purchase of the material from complainant. As to the right to a personal decree against the purchasers, it makes no difference whether the material was delivered or used on the property upon which it is sought to fix a lien, or not. If it was purchased and delivered anywhere to the purchasers they are personally liable. The competency of Cook's testimony is important only as bearing on the right of the complainant to fix a lien on the property in question.

In support of the assignments the case of Continental National Bank v. First National Bank, 108 Tenn., 379-381 is cited. In that case the court said:

"It has been held that when it becomes material, either for or against a corporation, and as against a stranger, or as between two strangers, to prove what was done by the corporation; its books and records are admissible in evidence, and they are the best evidence. 6 Thomp. Corporations, sec. 7734.

"We think it not necessary that the bookkeeper who made the entries should be examined as to their correctness.

"At most, he could only testify, that the entries made by him are true entries of transactions reported to him by others. In other words, he could only testify that he wrote down what others told him. The court knows, as a matter of common information, that there are many persons in the employ of banks, and each has his different department, and each transaction passes through the hands of several . . . it may be many persons. We take a deposit, for instance. It goes into the hands of the receiving teller, thence into the hands of a journal clerk, thence to the individual bookkeeper, or such other officials as perform the functions of these officers. When it reaches the hands of the bookkeeper, who makes the final entry, which stands as the true statement between the bank, and depositor, it has gone through the hands of a dozen parties, perhaps, and the last party only records what comes to him through so many hands, and knows nothing, it may be, of the actual transaction. It would seem that the cashier, whose function it is to overlook all transactions at the counter, and over the books, and test each transaction through all its stages, should be the person most competent to produce the books and vouch for their accuracy."

Also Burns v. City of Nashville, 142 Tenn., 611 in which the court said:

"It was held in the case of Bank v. Bank, 108 Tenn., 280, 381, 68 S. W., 497, that it was not necessary to introduce the bookkeeper, who made the entries in the books of the banks, to testify as to their correctness because, at most, he could only testify that the entries made by him were true entries of transaction reported to him by others.

"In the case of Heike v. United States, 227 U. S., 131, 33 Sup. Ct., 226, 57 L. Ed., 450, it was held that books in which were entered the weights of importations of sugar by city weighers were admissible in evidence in the prosecution against the officers of a sugar refining company for conspiracy to commit an offense against the United States, without calling the weighers who had made the entries to prove the books."

Other cases cited which support the rule announced in the above Tennessee cases are: Givens v. Pearson, 167 Kentucky, 574; 181 S. W., 324; Fielder v. Collier, 13 Ga., 496; Burke Electric Company v. Pennsylvania Light & Power Co.; Keim v. Rush, 5 Watts and S. (Pa. 377).

Mr. Wigmore in his work on evidence section 1530 points out the necessity that frequently arises under modern industrial conditions of admitting in evidence book entries based on data, furnished by employees in the regular course of business, without the production

of the latter as witnesses, who even if they could be produced would in all probability, have little recollection of the particular transaction; and in which the conclusion is reached in effect that if the production as witnesses of the numerous persons having personal knowledge of the transaction, would in a particular case outweigh the probable utilities of doing so the production may be dispensed with.

Counsel for appellees endeavors to break the force of the cases cited, by the argument that in those cases the books were produced or accessible. The rule applies to books and records. A. J. Cook says he is testifying from the records of the corporation. We take it this means books and papers on file. It will be noticed that the objection to the testimony was not upon the ground that the books were not produced but that the employees who kept the books were not produced as witnesses. The books were not called for. The dray tickets, however, were produced and they are the original records of the office of the complainant corporation.

If the exceptions of appellees are well taken in order to render this evidence competent, it would be necessary for the appellant to take the testimony of all the clerks who took part in writing out the dray tickets before delivery to the drivers, and to call as witnesses each and all of the teamsters or others who took part in the deliveries of the material in question which the record shows were made in many distinct and separate loads and extending over a period of about three months. This seems to bring the evidence within the reason of the rule laid down in the cases above referred to. These dray tickets are the best evidence of the delivery of this building material on the premises 1707 York avenue. They are made out according to the regular course of business of this corporation and according to the course of all credit business. Each one shows so much material sent from complainant to 1707 York avenue to be delivered to J. P. Seaton Co. and with few exceptions they show the acknowledgment of receipt by J. P. Seaton, signed by himself or by some one else. It would be well nigh impossible to call as witnesses all the employees who had anything to do with these deliveries and if called their testimonies would probably be worth little compared with the written memoranda of the dray tickets.

We think the Chancellor was in error in sustaining the objections to the testimony of A. J. Cook and the result is the decree is wrong in dismissing complainant's bill but a decree should have been rendered giving a personal judgment against J. P. Seaton and Clara Mae Wilcoxon and declaring a lien on the property in question for the debt. The Chancellor held the house 1707 York avenue was finished by August 2, 1923 and that all items charged after that were erroneous and could not be charged to defendants. This holding is supported by the weight of the evidence and is correct.

There is something in the testimony of W. L. Wilcoxon to the effect that more material appears on the statement as delivered in May than was needed for the foundation of this house. This is in the nature of an opinion. Seaton says the statement is correct, and besides if more material was ordered sent to this lot and for this house than was needed, and such material was so delivered, it would not be necessary for complainants to show that it went into this house.

It is contended for the defendant appellees that there can be no lien allowed because there is no contract to furnish material for this house 1707 York avenue and three cases are cited. The two in which the lien was denied are entirely different from this ·case. In Mills v. Mfg. Co., 91 Tenn., 469 and Gillespie v. Stanton, 8 Bax., 284, no house was in contemplation. In the present case the contract was to furnish material for three houses on York avenue as ordered for each particular house. That is the only way the contract can be construed taking all the evidence in the record bearing on the question. In the other case cited, Bassett v. Bertorelli, 92 Tenn., 551, the court says "as already stated the materials here involved were ordered and furnished for use in a particular building. The heading of the account on the books of complainants is as follows: 'Edward Larkin for Bertorelli House, bought of Bassett & Clapp.'"

The dray tickets in the present case which we have held competent evidence read "received of A. J. Cook & Co., Inc., for delivery to J. P. Seaton Co. at 1707 York avenue." The record supplies the implication that this material was ordered sent to that house and we have held that the proof shows it was delivered on that lot. We think this answers the requirements of the statute in regard to liens of furnishers and material men.

The decree of the lower court is reversed and a decree will be entered in favor of complainant for the amount sued for $655.05 less the items after August 2, 1923, $39.70 with interest and costs against J. P. Seaton and Clara Mae Wilcoxon and declaring a lien on the property in question and the cause will be remanded to the chancery court of Shelby county for the purpose of enforcing said decree. Appellees will pay the cost of the appeal.

## ON PETITION FOR REHEARING.

HEISKELL, J. The only question made in this petition for a rehearing, which was not made and considered on the original hearing, is that the complainant took other security for its debt and thereby waived its lien on the premises 1707 York avenue. This question was not referred to on the original hearing in this court either in oral argument or in the brief filed. It was therefore not considered by the court.

On behalf of the complainants, it is contended that these defendants cannot be heard to set up this defense now in this court be-

cause it was not made in the lower court. Counsel for the defendants admits that the defense was not set up in the answer, but says it was not known until the proof was taken and that then it was made in argument and brief in the lower court. There is nothing in the record to show when the facts sought to be relied on now were first discovered by these defendants nor that the defense was insisted on in any way before the lower court. However, confining ourselves to the failure to set up the defense in the answer, Mr. Gibson says:

"The defendant in answering must be careful to set forth, clearly, any and all special defenses he intends to rely on, whether such special defenses be matters of law, or matters of fact. If he intends to rely on (1) the want of proper parties, (2) on the statute of frauds, (3) the statute of limitations, (4) the defense or innocent purchaser, (5) nonpartnership with a co-defendant, (6) failure, or illegality, of consideration, (7) usury, (8) payment, (9) satisfaction, (10) release, (11) former adjudication, (12) nonperformance of condition precedent, (13) alteration of instrument sued on, (14) tender, (15) higher security taken, (16) merger, (17) an account stated, (18) title paramount, (19) an award, (20) a compromise, (21) infancy, (22) coverture, (23) drunkenness, (24) mental unsoundness, (25) fraud, (26) duress, (27) estoppel, (28) none est factum, (29) nonpartnership of complainants, (30) set-off, (31) recoupment, or the like, he must set up these defenses in a clear and unambiguous manner, to the end that the complainant may be apprised thereof; for he cannot avail himself of any matter in defense which is not stated in his answer, even though it should appear in the evidence.

"It would be a gross fraud upon the complainant to allow a defendant to set up one defense in his answer, and to make out and reply upon an entirely different defense in his proof. If such a practice were tolerated, instead of a pleading subserving the purpose of notifying the adversary of what the pleader intended to prove, it would be a mere ruse to enable him to mislead and deceive his adversary as to his real cause of action, or real defense. And where a defendant has made out a case by proof, different from the one set up in his answer, he should not be allowed to amend his answer so as to conform to the proof, without being onerated with the costs of all the proof taken in the cause. The proofs must be conformed to the pleadings, and it is a reversal of both logic and law to allow a party to conform his pleadings to his proofs. Gibson suits in chancery, sec. 358.) "

In addition to this, it is contended for complainant that the proof relied on in the petition for a rehearing does not support the contention of petitioners as it does not show that Cook & Co. was given

a trade acceptance to cover this particular account here sued on. The first excerpt from the testimony of W. L. Wilcoxon in the petition for rehearing is in part as follows:

"Q. Did the West Memphis Lumber Company not at one time settle this account sued on in this case? A. Yes.

"Q. How did it settle it? A. By a trade acceptance signed by West Memphis Lumber Company by J. D. Brown.

"Q. Those trade acceptances were taken by A. J. Cook & Co., were they not, in complete settlement? A. I do not know whether they were in complete settlement or not. It was during my absence in Mississippi."

The next excerpt from testimony of same witness contains this:

"Q. You say that West Memphis Lumber Company gave Mr. Cook some trade acceptance? A. Yes.

"Q. Were they in any way marked for this particular job? A. I could not tell you."

And in the third excerpt from Wilcoxon's testimony we find this:

"Q. You know the amount of the trade acceptance that West Memphis Lumber Company gave Cook trade acceptance for the entire amount of each job? A. I know they paid Cook money all along.

"Q. You mean West Memphis Lumber Company? A. Yes."

In the quotation set out from Cook's testimony he says:

"A. I accepted trade acceptances from time to time from the West Memphis Lumber Company to apply on their general account.

"Q. Now I will ask you, Mr. Cook, to state whether or not—

"Mr. Swift: Did you say to apply on general account?

"The Witness: Yes."

We think both contentions of the complainant are well taken. The defense was one which should have been set up in the answer. If discovered too late for the original answer this would have been good ground to ask leave to amend. But if the waiver had been properly pleaded we do not think the proof would support it. Wilcoxson does not know whether the acceptances were taken in complete settlement or not, and he does not know whether they were given on this particular job. And when asked a question which gave him a good opportunity to answer as to the amount of said trade acceptances, he declines to state and simply says, "I know they paid Cook money all along." This does not show any such acceptance of security as to the specific amount sued on in this case as would amount to a waiver of the specific lien sought to be enforced. A waiver as to any other part of the indebtedness of complainant would not be a waiver of the lien as to particular indebtedness made the basis of this suit. Electric Light Co. v. Gas Co., 99 Tenn., 371.

There is another objection which might well be urged to this defense being made at this time in this court even conceding that it could be made without pleading it in the lower court, and that is, the fact relied on is not found by the Chancellor and there is no request for further finding of facts. If a waiver is to be predicated on facts not pleaded but brought out in proof the Chancellor should have been asked to pass on the facts necessary to support the contention.

The petition for rehearing is denied.

Owen, J., and Hughes, Special J., concur.